OPINION OF THE COURT
 

 Ciparick, J.
 

 The issue on this appeal is whether and to what extent an interest in restricted stock and stock option benefit plans provided by a spouse’s employer constitutes marital property for the purposes of equitable distribution, where the plans come into being during the marriage but are contingent on the spouse’s continued employment with the company after the divorce. Because we conclude that the record was insufficient to allow the Trial Judge to make that determination, we reverse and remit to Supreme Court for further proceedings.
 

 
 *646
 
 The parties were married on October 14, 1979, seven months after the husband had begun his employment with Astoria Financial Corporation. Two children were born of the marriage, in October 1986, and in April 1991. Over the course of the marriage, the husband was steadily promoted at Astoria, attaining the position of First Assistant Vice-President in December 1993. The wife worked until October 1986, but thereafter devoted her efforts primarily to maintaining the marital household and raising their children.
 

 On November 18, 1993, Astoria granted the husband two restricted stock benefit plans, the Incentive Stock Option Plan (ISOP) and the Recognition and Retention Plan (RRP). The ISOP provided for the husband to receive an option to purchase a total of 3,053 shares of Astoria stock at $25 per share, exercisable in three equal annual installments on January 10, 1997, 1998 and 1999. Similarly, the RRP provided for the husband to receive outright a total of 2,036 shares of Astoria stock, in three equal annual installments, beginning on January 10, 1997. Both were contingent on the husband’s continued employment with Astoria and both were described as "incentive” for corporate officers.
 
 [1]
 
 The husband acknowledges that both stock option plans are qualified deferred compensation plans enjoying favorable tax treatment afforded by the Internal Revenue Code.
 

 The wife commenced this divorce action on July 30, 1994. In Supreme Court, the parties stipulated to maintenance, child support and the equitable distribution of all assets, save the stock plans. The parties agreed to divide all marital property equally but requested the court to settle the question of how much of the stock plans constituted marital property subject to the stipulated 50/50 distribution. This last issue was resolved upon the submission of trial memoranda from both sides. On these facts, the trial court found that while the husband’s rights to the stock plans "do not mature immediately and may never mature, depending on whether defendant continues in employment, they are tangible benefits which were bestowed on defendant during the marriage” (De
 
 Jesus v De Jesus,
 
 163
 
 *647
 
 Misc 2d 267, 270). Consequently, the trial court deemed all of the stock plans marital property, to be divided equally, with the husband to serve as constructive trustee of the wife’s shares as they vest.
 

 The husband appealed, arguing that, since his interest in the stock plans would not vest until several years after the commencement of the matrimonial action, it was error for the trial court to determine that the whole of both plans was marital property. Rather, he argued, the marital portion of the stock plans should have been determined using a time rule, similar conceptually to that enunciated by this Court in the context of pension rights in
 
 Majauskas v Majauskas
 
 (61 NY2d 481), with the portion of the stock plans comprising marital property being proportional to the ratio of (1) the time from Astoria’s grant of the stock plans until the commencement of the divorce action over (2) the time from the grant until the husband’s interest in the stocks vests. The Appellate Division affirmed, holding that "Considering the characteristics of the employee benefit plans * * * both plans constituted deferred compensation for employment during the term of the marriage and are entirely marital property”
 
 (DeJesus v DeJesus,
 
 227 AD2d 583). We granted leave to appeal.
 

 Analysis
 

 At the outset, we note that, while the method of equitable distribution of marital property is properly a matter within the trial court’s discretion, the initial determination of whether a particular asset is marital or separate property is a question of law, subject to plenary review on appeal.
 

 The Domestic Relations Law defines marital property as "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action” (Domestic Relations Law § 236 [B] [1] [c]). The statute is sweeping and "recognizes that spouses have an equitable claim to
 
 things of value
 
 arising out of the marital relationship”
 
 (O’Brien v O’Brien,
 
 66 NY2d 576, 583 [emphasis added]). Consequently, this Court has held "marital property” to include a wide range of intangible interests which in other contexts might not be recognized as divisible property at all.
 

 In
 
 Olivo v Olivo
 
 (82 NY2d 202), for example, we held that the wife was entitled to share pro rata in the husband’s early retirement pension acceleration, even though it had been
 
 *648
 
 awarded to him
 
 after
 
 their divorce, because the husband’s right to the pension had largely been earned during the marriage. The wife was not entitled to share, however, in Social Security bridge payments and a separation payment awarded to the husband contemporaneously with the accelerated pension, because the husband’s right to these payments had arisen entirely after the marriage.
 

 Similarly, in
 
 Burns v Burns
 
 (84 NY2d 369), where the question was whether and to what extent the husband’s nonvested pension rights constituted marital property, we held that the nonvested pension’s "value cannot reasonably be deemed to accrue only at the particular point in time when vesting occurs. Rather, the view that the nonvested pension has been earned gradually over a period of time that encompasses the marriage and should be distributed accordingly more appropriately reflects the economic realities”
 
 (id,.,
 
 at 376). This Court applied the presumption in favor of marital property, premised on the contemporary view of marriage as an economic partnership, crediting each party’s contributions, whether monetary or not, to the growth and value of the marriage.
 

 Stock Plans Generally
 

 Stock plans can vary widely and may possess many of the same characteristics as nonvested pension plans. They can be deferred compensation for past services or incentives for future services. They can be outright gifts or subject to purchase. This is the first time we are called upon to determine the manner in which stock plans are to be distributed in a matrimonial action, and we deem it instructive to review the approaches to distribution of nonvested stock plans of other States. Although we recognize that some of the referenced cases were decided in community property jurisdictions; the underlying considerations common to stock plan valuation and equitable distribution disputes are quite similar.
 
 [2]
 

 
 *649
 
 Significant among these cases is the decision of the California Court of Appeals in
 
 In re Marriage of Hug
 
 (154 Cal App 3d 780, 201 Cal Rptr 676,
 
 supra).
 
 The parties in
 
 Hug
 
 were married in April 1956, and separated in June 1976. Mr. Hug began employment with Amdahl in November 1972. The trial court found that Amdahl’s stock option plan had been adopted " 'for the purpose of attracting and retaining the services of selected directors, executives and other key employees and for the purpose of providing an incentive to encourage and stimulate increased efforts by them’ ” (154 Cal App 3d, at 783, 201 Cal Rptr, at 678). As in this case, the options at issue had been granted during the marriage, but were exercisable after the parties’ separation.
 

 The
 
 Hug
 
 court noted that stock options can be characterized as compensation for past, present or future services, depending on the circumstances involved in the grant of the particular option. It then held that, under the facts of that case, it was within the trial court’s "broad discretion” to allocate the parties’ community and separate property interests in certain stock options by applying a time rule. The number of options which were deemed community property would be the product of a fraction whose numerator was "the period in months between the commencement of the spouse’s employment by the employer and the date of separation of the parties,” and whose denominator was "the period in months between commencement of employment and the date when each option is first exercisable” (154 Cal App 3d, at 782, 201 Cal Rptr, at 678).
 

 Hug provides a useful examination of the competing considerations of law and equity, predictability and flexibility, past versus future services, and accrual outside of and within the marriage which a court must attempt to balance in developing a rule for the equitable distribution of stock plans
 
 (see also, In re Marriage of Walker,
 
 216 Cal App 3d 644, 265 Cal Rptr 32;
 
 In re Marriage of Harrison,
 
 179 Cal App 3d 1216, 225 Cal Rptr 234;
 
 In re Marriage of Nelson,
 
 177 Cal App 3d 150, 222 Cal Rptr 790).
 

 
 *650
 
 By contrast, the Supreme Court of Colorado in
 
 In re Marriage of Miller
 
 (915 P2d 1314 [Colo], supra) adopted a multitiered method of analysis to determine how much of the stock plan was marital property. The parties in
 
 Miller
 
 were married in June 1983 and divorced in November 1992. Mr. Miller received stock option grants in 1988, 1990 and 1991, much of which would not vest until 1993 and later, after the dissolution of the marriage. The record on appeal in
 
 Miller
 
 does not indicate when Mr. Miller began his employment with Hewlett-Packard, the issuer of the stock plans in question. The
 
 Miller
 
 court held that, to the extent that a stock plan is granted for past services, it is wholly marital property. Conversely, "an employee stock option granted in consideration of future services does not constitute marital property until the employee has performed those future services.” (915 P2d, at 1319.)
 

 The
 
 Miller
 
 court thus recognized that a stock plan may have elements which are compensatory for past services and elements, which are incentive for future services. To the extent that a stock plan is compensation for past services rendered by the employee during the marriage and up until the time of the grant, it is marital property, and to the extent that a stock plan is granted as incentive for future services, it is not earned until those services are performed. Even then, however, the incentive stock plan can still be marital property if the marriage is in existence between the time of the grant and the time that the stock plan vests.
 

 Taking all of these considerations into account, the
 
 Miller
 
 court thus held that the marital portion of stock plans is a function of four separate calculations: (1) the relative shares traceable to past and future services must be determined; (2) any portions of the stock plans which are intended as compensation for past services are deemed marital property to the extent that the marriage coincides with the period of the titled spouse’s employment, up until the time of the grant; (3) of that portion intended as incentive for future services, the marital portion is determined by a time rule like that employed by the California Court of Appeals in
 
 In re Marriage of Nelson
 
 (177 Cal App 3d 150, 222 Cal Rptr 790,
 
 supra);
 

 [3]
 

 and (4) all portions
 
 *651
 
 found to be marital property may be divided between the spouses.
 

 We are persuaded that a
 
 Miller-type
 
 analysis best accommodates the twin tensions between portions of stock plans acquired during the marriage versus those acquired outside of the marriage, and stock plans which are designed to compensate for past services versus those designed to compensate for future services.
 

 The Plans at Issue on This Appeal
 

 Here, the trial court, after placing a stipulation of settlement on the record as related to divorce, custody, visitation, distribution of property and maintenance and support obligations, adjourned for written submissions on the remaining open issue, namely the valuation and distribution of the stock plans. Then, without the benefit of any testimony from the husband, the husband’s employer or a stock plan expert, the court distinguished the ISOP and RRP from a third stock benefit plan, the Employee Stock Ownership Plan (ESOP), which the court found to be a fully vested pension plan subject to ERISA. As to the ISOP and RRP, the court declined to apply the
 
 Majauskas
 
 formula, although it did apply that formula both to the ESOP plan and to another pension, neither of which is contested on appeal. As noted above, the Appellate Division affirmed, holding that both plans constituted deferred compensation for the period of employment during the marriage and thus were entirely marital property.
 

 In our view, both courts lacked a sufficient basis for their determinations that the two stock plans constituted deferred compensation for employment during the marriage rather than some portion at least being purely incentive. The record does not reveal whether Astoria was rewarding the husband as a valued employee for past services, as well as providing a financial incentive to retain him as an officer. We do not know if these plans constituted a part of a key employee compensation package, given that Astoria was in the process of restructuring its corporate ownership and "going public.” We do not know what these stock plans represent, or how the husband’s entitlement was calculated by Astoria.
 

 The parties’ submissions, absent sworn testimony or documentation from persons with knowledge of just how and why
 
 *652
 
 these stock plans came to be, do not suffice to enable the courts to determine what portions of the plans at issue, if any, constitute marital property. Consequently, a remittal to the trial court is necessary to make specific findings upon further appropriate proceedings.
 
 [4]
 

 Application of the Law to the Plans in Issue
 

 In deciding upon and applying a rule for the equitable distribution of these stock plans, we must be guided by the statutory presumption that all property, unless clearly separate, is deemed marital property and must further recognize the titled spouse’s burden to rebut that presumption.
 

 The Trial Judge thus must first determine, based on competent evidence, whether and to what extent the stock plans were granted as compensation for the employee’s past services or as incentive for the employee’s future services. We recognize, as have other courts, that any list of pertinent considerations could only be illustrative and not exhaustive (see,
 
 e.g., In re Marriage of Miller,
 
 915 P2d 1314, 1319, n 9,
 
 supra).
 
 However, relevant factors would include whether the stock plans are offered as a bonus or as an alternative to fixed salary, whether the value or quantity of the employee’s shares is tied to future performance and whether the plan is being used to attract key personnel from other companies.
 

 To portions of the stock plans found to be compensation for past services, a time rule should be applied to factor out any value which may be traceable to the period before the marriage, where the numerator is the time from the later of the beginning of the titled spouse’s employment with the issuing company, or the beginning of the marriage, until the date of the grant, and the denominator is the time from the beginning of the titled spouse’s employment until the date of the grant. To portions found to be granted as incentive, a second time rule should be applied to determine the marital share, that is, accretions from the time of the grant until the matrimonial action was commenced, and any further accumulations attributable to the contributions of the nontitled spouse. Here, the numerator is the period of time from the date of the grant until the end of the marriage, which is the earlier of the date
 
 *653
 
 of the separation agreement or the commencement of the matrimonial action and the denominator is the period of time from the date of the grant until the stock plan matures.
 

 Finally, what is determined to be marital property may then be equitably distributed, generally according to the Judge’s discretion, here 50/50 as agreed by the parties.
 

 On remittal, application of the rules we have enunciated should resolve the issue of what portions of the plans constitute marital property, reflecting the wife’s right to share in whatever value of the stock plans accrued during the marriage, during which time she contributed to her husband’s successful career in banking through her services as wife and homemaker. The remainder would be separate property, not subject to equitable distribution, which the husband has the right to enjoy, as separate property traceable to the years outside of the marriage, the fruit of his sole labors.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Wesley concur.
 

 Order reversed, etc.-
 

 [1]
 

 . The ISOP has as its stated purpose "to advance the interests of the Company by providing incentives to key employees of the Company and its Affiliates * * * in the form of opportunities for stock ownership in the Company!.]” The RRP has as its stated purpose "to provide officers of the Association and its affiliates an incentive to achieve the long-term objectives of the Association by providing such key personnel with a proprietary interest in Astoria Financial Corporation”.
 

 [2]
 

 . Like stock plans themselves, the decisions have varied widely. A few courts have held that stock options which are not exercisable at the end of the marriage do not constitute marital property at all (see,
 
 Hann v Hann,
 
 655 NE2d 566 [Ind App];
 
 Hall v Hall,
 
 88 NC App 297, 363 SE2d 189;
 
 Ettinger v Ettinger,
 
 637 P2d 63 [Okla]). Other courts have deemed stock plans granted during the marriage to be wholly marital property
 
 (see, Green v Green,
 
 64 Md App 122, 494 A2d 721;
 
 Smith v Smith,
 
 682 SW2d 834 [Mo App];
 
 Chen v Chen,
 
 142 Wis 2d 7, 416 NW2d 661). Finally, many courts have chosen to apply various time rules, which typically determine the marital share of the stock plans by dividing the period of the titled spouse’s employment during the
 
 *649
 
 marriage by the time from the date that the titled spouse was hired by the issuing company until the stock plan vests
 
 (see, In re Marriage of Hug,
 
 154 Cal App 3d 780, 201 Cal Rptr 676;
 
 In re Marriage of Miller,
 
 915 P2d 1314 [Colo];
 
 In re Marriage of Frederick,
 
 218 Ill App 3d 533, 578 NE2d 612;
 
 Goodwyne v Goodwyne,
 
 639 So 2d 1210 [La App];
 
 Salstrom v Salstrom,
 
 404 NW2d 848 [Minn App];
 
 Garcia v Mayer,
 
 122 NM 57, 920 P2d 522 [NM App];
 
 Dietz v Dietz,
 
 17 Va App 203, 436 SE2d 463;
 
 In re Marriage of Short,
 
 125 Wash 2d 865, 890 P2d 12
 
 [en banc]; Kapfer v Kapfer,
 
 187 W Va 396, 419 SE2d 464).
 

 [3]
 

 . In
 
 Nelson,
 
 the California Court of Appeals found it within the trial court’s " 'broad discretion’ ” to allocate stock options according to "a formula in which the numerator was the number of months from the date of grant of each block of options to the date of the couple’s separation, while the denominator was the period from the time of each grant to its date of exer
 
 *651
 
 cisability”
 
 (In re Marriage of Nelson,
 
 177 Cal App 3d 150, 155, 222 Cal Rptr 790, 793,
 
 supra).
 

 [4]
 

 . We note that the Trial Judge here may well determine the apportionment of the ISOP and RRP shares to be different one from the other, because of the measurably different purposes and mechanisms of the plans. The decision whether to apportion the two plans differently can only be made after consideration of additional evidence.