**HEINE**

v.

**HEINE.**

2003-Ohio-7365.]

Court of Common Pleas of Ohio,
Lucas County,
Domestic Relation Division.

No. DR 2002–0342.

Decided June 30, 2003.

George Gernot III, for plaintiff Michelle D. Heine.

Melvin G. Nusbaum, for defendant Charles F. Heine.

---

NORMAN G. ZEMMELMAN, Judge.

{¶ 1} This cause was before the court on the motion for summary judgment filed by plaintiff Michelle D. Heine, as well as the motion for summary judgment filed by defendant Charles F. Heine. For the reasons stated below, plaintiff's motion shall be granted in part and defendant's motion shall be overruled.

{¶ 2} The plaintiff requests that the court find that all of Dana Corporation's restricted stock benefits, including dividends and future rights, acquired by the defendant pursuant to four separate Restrict Stock Agreements awarded during the marriage are marital property subject to division.

{¶ 3} The defendant requests that the court find that all of Dana's restricted stock benefits, including dividends and future rights, acquired by the defendant pursuant to the recent three separate Restrict Stock Agreements during the marriage are separate property and not subject to division.

{¶ 4} As stated by the Sixth Appellate District Court in *Eller v. Continental Invest. Partnership*, 151 Ohio App.3d 729, 2003-Ohio-894, 785 N.E.2d 802, at ¶ 8–10:

"On review, appellate courts employ the same standard for summary judgment as trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. The motion may be granted only when it is demonstrated:

" "* * *(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.' *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, Civ.R. 56(C).

"When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery* (1984), 11 Ohio St.3d 75, 79, 11 OBR 319, 463 N.E.2d 1246. A 'material' fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186; *Needham v. Provident Bank* (1996), 110 Ohio App.3d 817, 826, 675 N.E.2d 514, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202."

{¶ 5} The Supreme Court of Ohio has stated that "a summary judgment proceeding is not a trial but a hearing upon a motion. The court must determine whether there is a genuine issue as to any material fact, and the court's decision must rest upon specifically prescribed sources of evidence." *Morris v. First Natl. Bank & Trust Co.* (1968), 15 Ohio St.2d 184, 185, 44 O.O.2d 153, 239 N.E.2d 94.

{¶ 6} In *Bowmer v. Dettelbach* (1996), 109 Ohio App.3d 680, 684, 672 N.E.2d 1081, the court stated:

"* * * Civ.R. 56(C) controls the materials that the court may consider when it determines whether there are any triable issues of fact. The rule directs the court to consider only 'the pleading[s], depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action.' Thus, any documents must be accompanied by a personal certification that they are genuine in order for them to be admissible evidence for summary judgment purposes. *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 222–223, 515 N.E.2d 632, 634–635 (the court should not consider uncertified copies of an employee manual under Civ.R. 56[C]; such documents must be incorporated by reference in a properly framed affidavit pursuant to Civ.R.

56[E] ). *Where the opposing party fails to object to the admissibility of the evidence under Civ.R. 56, the court may, but need not, consider such evidence when it determines whether summary judgment is appropriate. Watts v. Watts* (Mar. 18, 1994), Lucas App. No. CV 91-0302, unreported, 1994 WL 88765; *Bergquist v. Med. College of Ohio* (June 10, 1988), Lucas App. No. L–87–327, unreported, 1988 WL 60970; *Hersch v. E.W. Scripps Co.* (1981), 3 Ohio App.3d 367, 373, 3 OBR 430, 436, 445 N.E.2d 670, 677–678; and *Brown v. Ohio Cas. Ins. Co.* (1978), 63 Ohio App.2d 87, 90–91, 17 O.O.3d 267, 268–269, 409 N.E.2d 253, 255–257." (Emphasis added.)

{¶ 7} The court finds that both motions for summary judgment before the court contain allegations and operative facts that are minimally supported by Civ.R. 56 evidential materials to affirmatively show that the opposing party had no evidence to support his/her claims. In support of their motions for summary judgment, the parties attached, inter alia, affidavits of the plaintiff, Mr. Shulman, and Mr. Smith, Dana Corporation's 1999 Restricted Stock Plan as amended, three Restricted Stock Agreements, and a Deferred Compensation Transaction Detail Report for Restricted Stock Plan For Active Accounts. Defendant also submitted an unfiled and uncertified condensed transcript of plaintiff's deposition testimony. The court further finds that neither party moved to strike any exhibits and that there are no objections to the nonconforming exhibits' form or substance. As such, these exhibits could be considered or not at the discretion of the trial court. *Bowmer v. Dettelbach,* supra.

█ {¶ 8} "Marital property" includes all real and personal property that currently is owned by either or both of the spouses and acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). "Marital property" also includes all interest that either or both of the spouses currently has in any real or personal property that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(ii). A trial court is to assume that any property acquired during the marriage is marital unless evidence is offered to rebut that presumption. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 160, 694 N.E.2d 989.

{¶ 9} The parties were married in New Haven, Indiana, on May 24, 1975, and separated on October 31, 2001. The defendant has been an employee of Dana Corporation since the date the parties were married. In plaintiff's affidavit, she testified that defendant "is presently considered a 'key employee' of Dana Corporation, his status arose because of our joint marital effort"; that defendant "is, and has been employed by Dana Corporation * * * during the course of our entire marriage * * * and has been employed by Dana Corporation for more than twenty-eight years as of June 12, 2003"; that "[a] portion of my husband's total compensation from Dana Corporation consists of grants of Restricted

Shares of Dana Corporation stock"; that "[g]rants have been made during the course of our marriage on April 15, 1996, April 20, 1998, April 19, 1999, and February 12, 2001"; and that "his (Defendant's) knowledge of personnel throughout Dana Corporation, his knowledge of conditions, plants and circumstances impacting Dana's business throughout the world arise because of our marital effort."

{¶ 10} Defendant's restricted stock grants were issued by four Restricted Stock Agreements pursuant to Dana's Restricted Stock Plan ("Plan") and its subsequent amendment.

{¶ 11} "The *purpose of the Plan is to secure for the Corporation* and its stockholders the benefits of incentive inherent in stock ownership in the Corporation by *key employees of the Corporation* and its Subsidiaries, who are *largely responsible for its future growth and continued success. It is generally recognized that stock plans aid in retaining and encouraging employees of exceptional ability* because of the opportunity offered such individuals to acquire an interest parallel to that of the shareholders of the Corporation." (Emphasis added.) Section 1, The Dana Corporation 1999 Restricted Stock Plan, Exhibit 2. "Stock" is defined as "the Common Stock of the Corporation." Section 2, id.

{¶ 12} "Eligibility for Participation" is defined as "[a]*ny key employee* of the Corporation, or any Subsidiary, * * * *whose judgment, initiative and efforts contribute or may be expected to contribute* materially to the successful performance of the Corporation or any Subsidiary, shall be eligible to receive a grant of Restricted Stock under the Plan. *In determining* the employees *to whom such a grant shall be made and the number of shares* of Restricted Stock which may be so granted, *the Committee shall take into account* the *duties of the respective employees, their present and potential contributions to the success* of the Corporation or any Subsidiaries * * * as the Committee shall deem relevant in connection with accomplishing the purpose of the Plan." (Emphasis added.) Section 5, The Dana Corporation 1999 Restricted Stock Plan, Exhibit 2.

{¶ 13} *"The Committee may * * * in its discretion grant Restricted Stock to officers and other key employees and may determine* the number of shares of Restricted Stock to be granted and *the terms and condition of, and the amount of payment, if any, to be made by the employee for, such Restricted Stock.* Each grant * * * will be evidenced by a written Restricted Stock Agreement containing terms and conditions not inconsistent with the Plan * * *. Such Restricted Stock shall be granted subject to the restrictions prescribed pursuant to the Plan and subject to the respective Restricted Stock Agreement." (Emphasis added.) Section 6(a), The Dana Corporation 1999 Restricted Stock Plan, Exhibit 2.

{¶ 14} The restricted stock is granted subject to conditions subsequent, including death, disability, and termination of the employee, as outlined in Section 6(b), The Dana Corporation 1999 Restricted Stock Plan, Exhibit 2.

{¶ 15} *"Upon a grant* of Restricted Stock, *a stock certificate* representing the number of shares of Restricted Stock granted * * * *shall be registered in the employee's name and shall be held in custody* by the Corporation or a bank *for the employee's account. Following such registration, the employee shall have the rights and privileges of a stockholder* as to such Restricted Stock, *including the right to receive dividends and to vote* such Restricted Stock * * *."* (Emphasis added.) Section 6(c), The Dana Corporation 1999 Restricted Stock Plan, Exhibit 2. The terms of defendant's Restricted Stock Agreements required that all dividends be applied toward accumulating additional shares of restricted stock similar to a dividend reinvestment program.

{¶ 16} In support of his request for summary judgment, defendant submitted the affidavit of Mark A. Smith Jr., an attorney with Dana's legal department. Smith has had primary responsibility for drafting Dana's Restricted Stock Plans and Restricted Stock Agreements. He stated that defendant received four restricted stock grants, "a grant for 2,000 shares that was made on April 20, 1998 (the '1998 Grant'), a grant for 2,000 shares that was made on April 19, 1999 (the '1999 Grant'), and a grant for 40,000 shares that was made on February 12, 2001 (the '2001 Grant'). The 1998 Grant vested on April 20, 2003, and the 1999 and 2001 Grants have not yet vested. Mr. Heine also received a restricted stock grant for 8,000 shares on April 15, 1996 that vested on April 15, 2001."

{¶ 17} The court finds that the terms of defendant's Restricted Stock Agreements executed on April 19, 1999, and April 20, 1998, granted shares of restricted stock to him and, in partial consideration for those shares, defendant was required to pay (within 60 days of the grant date), a specified amount of money. Defendant paid Dana $10,500 for the 2,000 shares granted April 1999. Exhibit 6, Defendant's Motion For Summary Judgment, filed June 19, 2003; Exhibit D,[1] Plaintiff's Exhibits, Motion For Summary Judgment, filed June 12, 2003. Defendant previously paid Dana $12,018 for the 2,000 shares granted April 1998. Exhibit 8, Defendant's Motion For Summary Judgment, filed June 19, 2003; Exhibit D, Plaintiff's Exhibits, Motion For Summary Judgment, filed June 12, 2003. Furthermore, $25,800 was paid upon the granting of the initial grant of 8,000 shares of restricted stock in April 1996. Exhibit D, Plaintiff's Exhibits, Motion For Summary Judgment, filed June 12, 2003. As no evidence was presented that separate funds were used for payments for these three grants that accrued during the marriage, the court finds that marital funds were expended,

---

1. This document shows a purchase price of $10,050.

and, therefore, finds that these three grants are marital property subject to division.

{¶ 18} Smith states that Dana awarded defendant the 40,000 shares of restricted stock granted in February 2001 because of (1) defendant's position as a key employee with Dana, whom the company wanted to retain through February 12, 2011; (2) to provide an incentive; and (3) to deter defendant from competing with Dana for three years after termination of employment. Smith also stated that "[i]t is my opinion that none of the 40,000 shares granted to Mr. Heine in connection with the 2001 Grant are currently vested, and accordingly *Mr. Heine has no current entitlement to these shares*. These shares remain subject to a 'substantial risk of forfeiture' pursuant to Internal Revenue Code § 83. Further, neither Mr. Heine nor Dana can transfer or assign his rights to these shares, either voluntarily or involuntarily." (Emphasis added.)

{¶ 19} Defendant argues, inter alia, that the grants were given as an incentive to ensure future service; that because the most recent three grants have not vested, he "has no vested interest" in the restricted shares granted to him; that he "has no present ownership right to said restricted stock"; that "[t]he Restricted Stock Agreements show * * * that the Defendant, * * * does not possess a current interest in any real or personal property"; and that the grants are subject to a substantial risk of forfeiture and therefore, "merely unsecured promise(s) by Dana Corporation to deliver * * * shares of stock of Dana Corporation." Defendant's Motion For Summary Judgment, filed June 19, 2003.

{¶ 20} While the court finds that the statement made by Smith about the uncertainty of defendant's ownership of the restricted stock is correct, he ignores the rights granted to the defendant by the Restricted Stock Agreement and Plan. For example, upon Dana's granting of the restricted stock to defendant and its registration, Dana holds actual shares of its common stock on behalf of the defendant; defendant became the legal title owner of the number of the specified shares of Dana's stock subject to conditions subsequent on the sale/transferability of the shares. More germane to the determination of whether defendant has a present property interest in the restricted shares pursuant to the grants is that defendant obtained immediate rights to vote the shares and to receive dividends generated from the restricted shares, which were mandated to be reinvested. The court finds that immediate rights to receive dividends and to vote the shares reflect that defendant obtained present property rights to the granted restricted shares.

{¶ 21} Based upon the foregoing, the court finds that Dana Corporation's restricted stock grants to be employment benefits granted to the defendant during the marriage as a result of defendant's past, present, and future employ-

ment efforts. Defendant was not a new hire when Dana made its initial grant to defendant in 1996; defendant had a proven track record of long duration, so that Dana deemed defendant a key employee in recognition of his past achievements and long employment with the company; the grants recognized defendant as a key employee and were rendered in part as incentives to defendant to both ensure continuation and future employment with Dana. The 2001 Grant further deemed defendant a key employee whom the company intended to retain through February 12, 2011, and whom the company did not want to compete for three additional years after defendant no longer was a company employee. *"As additional consideration for the grant of Restricted Shares, the Employee agrees that, for a period of three years following his termination* of employment for any reason (other than as a result of death) *he shall not engage in any of the activities described * * *."* (Emphasis added.) Page 7, Exhibit 4, Defendant's Motion For Summary Judgment, filed June 19, 2003.

{¶ 22} The most recent restricted stock grant of 40,000 shares is not readily classified as marital or nonmarital property. Under R.C. 3105.171(A)(3)(a), all definitions of "marital property" refer to property acquired "during the marriage." R.C. 3105.171(A)(2) defines that term as "the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation." If either or both of these dates would result in inequitable results, the court can select other dates that would result in a more equitable resolution. Id.

{¶ 23} A reading of the record now before the court shows that the most recent restricted stock grant is based upon past, present, and future considerations concerning defendant's employment at Dana. The court has already determined that to the extent the stock grant is based upon past and present consideration it would constitute marital property. However, future considerations subsequent to the "during the marriage" date would not qualify as marital property.

{¶ 24} The approach of distinguishing between past, present, and future considerations for receipt of restricted stock options has been followed by a majority of courts that have considered the issue. Unfortunately, this issue has not been squarely decided by any courts in Ohio.[2] Courts in other states that have

---

2. The court has located one case in which the parties agreed that restricted stock was marital property. In *Burner v. Burner* (Oct. 18, 2000), 9th Dist. No. 19903, 2000 WL 1533898, the parties stipulated, inter alia, that as a part of the division of marital property, husband would receive "5,000 shares of B.F. Goodrich restricted stock." In another case, in *Peterson v. Peterson* (July 12, 1999), 12th Dist. No. CA98-07-145, 1999 WL 527793, the parties' decree divided the husband's employment benefits from Phillip Morris, Inc. The benefits included a

considered the issue have determined that restricted stock may be awarded for a variety of purposes—to compensate an employee for past or present services, or to provide an incentive to an employee for future services. See, e.g., *DeJesus v. DeJesus* (1997), 90 N.Y.2d 643, 665 N.Y.S.2d 36, 687 N.E.2d 1319. A majority of the courts that have considered the issue have recognized that stock plans involve hybrid situations of past and present components competing with future considerations. See *In re Marriage of Miller* (Colo.1996), 915 P.2d 1314 (invested options contain elements of marital and nonmarital property and should be apportioned through utilization of a time rule or some other method).

{¶ 25} In *DeJesus v. DeJesus,* supra, 90 N.Y.2d at 652–653, 665 N.Y.S.2d 36, 687 N.E.2d 1319, the court stated:

"The Trial Judge thus must first determine * * * whether and to what extent the stock plans were granted as compensation for the employee's past services or as incentive for the employee's future services. We recognize * * * that any list of pertinent considerations could only be illustrative and not exhaustive * * *. However, relevant factors would include whether the stock plans are offered as a bonus or as an alternative to fixed salary, whether the value or quantity of the employee's shares is tied to future performance and whether the plan is being used to attract key personnel from other companies.

"To portions of the stock plans found to be compensation for past services, a time rule should be applied to factor out any value which may be traceable to the period before the marriage, where the numerator is the time from the later of the beginning of the titled spouse's employment with the issuing company, or the beginning of the marriage, until the date of the grant, and the denominator is the time from the beginning of the titled spouse's employment until the date of the grant. To portions found to be granted as incentive, a second time rule should be applied to determine the marital share, that is, accretions from the time of the grant until the matrimonial action was commenced, and any further accumulations attributable to the contributions of the nontitled spouse. Here, the numerator is the period of time from the date of the grant until the end of the marriage, which is the earlier of the date of the separation agreement or the commencement of the matrimonial action and the denominator is the period of time from the date of the grant until the stock plan matures."

{¶ 26} Other cases that have adopted a "time share" approach to distributing stock plans are *In re Marriage of Hug* (1984), 154 Cal.App.3d 780, 201 Cal.Rptr. 676 (options); *Davidson v. Davidson* (1998), 254 Neb. 656, 578 N.W.2d 848 (options and retention); *Salstrom v. Salstrom* (Minn.App.1987), 404 N.W.2d 848

---

deferred profit-sharing plan, a salaried employee's retirement plan, and a restricted stock award program. However, the benefits were not at issue on appeal.

(options); *In re Marriage of Short* (1995), 125 Wash.2d 865, 890 P.2d 12, 16 (options); *Bornemann v. Bornemann* (1998), 245 Conn. 508, 752 A.2d 978 (options).

{¶ 27} A minority of courts have adopted per se rules applicable to restricted stock plans that do not involve specific factual determinations as to the date(s) the restricted stocks are earned. Some courts find that stock options that are not exercised at the end of the marriage are not marital property regardless of other factors relative to the purpose behind the grant. *Hann v. Hann* (Ind.App. 1995), 655 N.E.2d 566 (options); *Hall v. Hall* (1987), 88 N.C.App. 297, 363 S.E.2d 189 (options). Other cases find the opposite—that stock plans accrued during the marriage are marital property regardless of any other factor. *Vollmer v. Vollmer* (1990), 187 Mich.App. 688, 468 N.W.2d 236 (unvested stock); *Mestayer v. Williams* (La.App.1990), 569 So.2d 1102 (restricted stock); *Green v. Green* (1985), 64 Md.App. 122, 494 A.2d 721 (options); *Smith v. Smith* (Mo.App.1984), 682 S.W.2d 834 (options).

{¶ 28} Given the various approaches taken by other courts, this court finds that the approach taken by a majority of the courts is the most appropriate method of deciding this issue. The majority approach is compatible with several features of the Ohio statute dealing with the division of marital property. For example, R.C. 3105.171 creates a presumption that property, in whatever form, acquired during the marriage is marital property subject to equitable division; Dana's restricted stock grant does not satisfy any of the statutory definitions of separate property under R.C. 3105.171(A)(6)(a)(i) through (vii); Ohio law provides that each spouse has contributed equally to the production acquisition of marital property pursuant to R.C. 3105.171(C)(2); and the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property under R.C. 3105.171(H).

{¶ 29} As the record now before this court does not address the appropriate method of determining whether the restricted stock award is based upon past, present, or future employment, the plaintiff's motion for summary judgment regarding distribution of the 40,000 shares of restricted stock granted in 2001 must be denied.

{¶ 30} The parties should understand that while the court will consider the language of the stock plan and testimony from the defendant, his employer, or any expert witnesses, none of this is dispositive of the ultimate issue. Rather, the court will consider all relative factors including, but not limited to, the following:

"[W]hether the employee stock options or stock retention shares were intended to (1) secure optimal tax treatment, (2) induce the employee to accept employ-

ment, (3) induce the employee to remain with the employer, (4) induce the employee to leave his or her employment, (5) reward the employee for completing a specific project or attaining a particular goal, and (6) be granted on a regular or irregular basis." *Davidson v. Davidson,* supra, 254 Neb. at 665, 578 N.W.2d 848.

{¶ 31} Based upon the foregoing, good cause therefore appearing, it is

{¶ 32} ORDERED ADJUDGED AND DECREED that the plaintiff's motion for summary judgment should be and hereby is granted in part and denied in part; and it is

{¶ 33} ORDERED ADJUDGED AND DECREED that the defendant's motion for summary judgment should be and hereby is denied.

Judgment accordingly.