OPINION OF THE COURT
Lawrence H. Ecker, J.
In this contested matrimonial action, a trial without jury was held over three days on November 13, 17, and 18, 2015. G.M. proceeded pro se and defendant, M.M., was represented by counsel. The parties, each duly sworn, testified at the trial. The only other witness was plaintiff’s friend, C.M., who testified that at one time plaintiff and defendant appeared to have a viable, intact marriage.
At the commencement of the trial, plaintiff presented sufficient proof, without opposition, that she is entitled to a divorce upon the grounds of irretrievable breakdown of the marriage for a period of six months or more prior to the date of commencement of this action on July 30, 2012 (Domestic Relations Law § 170 [7]).
In making its decision, the court has reviewed, considered and evaluated the testimony of the parties and plaintiff’s witness under oath,[1] and the documentary evidence admitted at trial. The court has also relied upon its personal observation of each witness in determining issues of credibility, and has evaluated all evidence in light of its relevance, materiality, credibility, importance, weight, and where applicable, permissible inferences have been considered.
The Issues
The parties presented testimony and documentary evidence primarily relating to spousal maintenance, child support, and equitable distribution.
Testimony
The parties were married in a religious ceremony in XXX on May 26, 1989. They separated in July 2012. There are two children, namely M.M., age 24, and R.M., age 19, both of whom *958 reside with plaintiff in the marital residence. Plaintiff and defendant are 52 years old. Plaintiff is a municipal employee in XXX. Defendant is retired, since 2007, from a municipal position, after 20 years of service. He is presently employed by XXX, LLC, a private company.
The crux of this case revolves around the fact that since 2003, defendant has admittedly maintained a meretricious relationship with A.S., and that they have two minor children together, namely C.M., date of birth XXX, and M.M., date of birth XXX. Plaintiff first learned of this relationship in July 2012 after confronting defendant with proof she had uncovered of the extramarital relationship, and the birth of the two children. He immediately vacated the marital residence in XXX. He claims he now resides with his parents, while confirming that he maintains steady and constant contact with A.S. and their children, who reside in XXX.
Plaintiff filed a summons for divorce on July 30, 2012 and defendant thereafter appeared by his attorney. Significantly, on October 2, 2012, A.S. filed a petition for child support in ABC County Family Court.[2] 3***On November 1, 2012, Family Court ordered defendant to pay $350 per week as basic child support for those children, and to maintain health insurance for them, with collection of the child support to be effectuated through the Support Collection Unit (exhibit B). It is further noted that the petition was filed by A.S. in her own right, and not by the Department of Social Services, notwithstanding she, and the children, had been, and may still be, the recipients of Medicaid. Defendant denies he was influential in A.S.’s decision to file for child support just two months after his wife filed for divorce, after so many years of the former being together with defendant, and when his son from his marriage was 16 years old.[3] The court does not find his denial to be credible, and rejects same, given his concession that he has maintained a steady relationship with her and the children from 2003 to the present.
When questioned as to how much he spent on A.S. and her children, defendant estimated the amount to be between $750 *959 to $1,500 per year, commencing with the first child’s birth in 2004, and until the date of the Family Court order, which requires him to pay $350 per week for two children. Once again, the court finds his testimony not worthy of belief as to how much of his income, and plaintiff’s income, through their joint savings, he diverted for the support of his second family. The court has considered that defendant apparently paid A.S.’s rent for some time when she and the children resided at YYY Street in XXX. For example, a rent payment check issued by defendant noted in the memo line on the lower left face of the check that it was for “Rent for YYY Street, Apt. ZZ.” The check was drawn from the parties’ joint checking account and made payable to “Cash” (plaintiff’s exhibit 4, check No. 4580 for $820, dated Jan. 6, 2011).
Defendant’s testimony was replete with other instances, discussed below, where his income was used to pay A.S.’s household expenses.
The court will utilize the parties’ respective demands, as enumerated on the record on November 17, 2015, as the outline for its determination of the issues presented for the court’s consideration.
Plaintiff’s Demands
Maintenance
Plaintiff initially seeks spousal maintenance from defendant. The court declines to award maintenance to her, in that she is a municipal employee in XXX, who earned $130,755 in 2014 (exhibit 32, 2014 income tax return), and who will earn an estimated gross salary of $133,82.74 in 2015 (exhibit 33, Sept. 15, 2015 pay stub, showing year-to-date gross earnings of $94,833.61, which when divided by 8.5 [months] and multiplied by 12 [months] equals $133,882.74). Hence, given the preseparation standard of living, and defendant’s claimed earnings of $107,268 in 2014 (see exhibit F, defendant’s 2014 income tax return), for the purposes of maintenance, plaintiff is the monied spouse with the capability of being self-supporting.
Child Support
Plaintiff next seeks child support for R.M. There is a factual issue as to whether defendant should be ordered to pay child support for R.M., age 19, who along with his 24-year-old brother, M.M., resides with plaintiff. She was unclear as to *960 R.M.’s employment status, while defendant testified that R.M. is employed working full-time, earning $17 per hour, and that when there is no work for him, he is eligible to receive unemployment benefits. Plaintiff did not rebut this assertion.
The court finds that R.M. is self-supporting such that defendant does not have an obligation to pay child support.
Equitable Distribution
The premise of the equitable distribution law is that “a marriage is, among other things, an economic partnership to which both parties contribute as spouse, parent, wage earner or homemaker.” (O’Brien v O’Brien, 66 NY2d 576, 585 [1985]; Fields v Fields, 15 NY3d 158 [2010].)
“The Equitable Distribution Law reflects an awareness that the economic success of the partnership depends not only upon the respective financial contributions of the partners, but also on a wide range of nonremunerated services to the joint enterprise, such as homemaking, raising children and providing the emotional and moral support necessary to sustain the other spouse in coping with the vicissitudes of life outside the home.” (Price v Price, 69 NY2d 8, 14 [1986]; see also DeLuca v DeLuca, 97 NY2d 139 [2001].)
The equitable distribution of marital assets must be based on the circumstances of the particular case and the consideration of a number of statutory factors. (Holterman v Holterman, 3 NY3d 1 [2004]; Domestic Relations Law § 236 [B] [5] [d].) “The trial court is vested with broad discretion in making an equitable distribution of marital property and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed.” (Michaelessi v Michaelessi, 59 AD3d 688, 689 [2d Dept 2009] [internal quotation marks and ellipsis omitted].)
“In determining equitable distribution, the trial court is directed to consider statutory factors, including the income and property of each party at the time of the marriage, and at the time of commencement of the divorce action, the duration of the marriage, the age and health of the parties, any maintenance award, and the nontitled spouse’s direct or indirect contributions to the marriage, *961 including services as a spouse, parent, wage earner and homemaker.”* 23[4]
(Loria v Loria, 46 AD3d 768, 769 [2d Dept 2007] [internal quotation marks omitted]; Domestic Relations Law § 236 [B] [5] [d] [6].)
Marital property is defined in Domestic Relations Law § 236 (B) (1) (c) as “all property acquired by either or both spouses during the marriage.” Under the law of equitable distribution, there is a presumption that all property acquired by either spouse during the marriage is marital property. (See Domestic Relations Law § 236 [B] [1] [c]; DeLuca v DeLuca at 144.) The burden rests with the titled spouse to rebut the presumption of marital property. (DeJesus v DeJesus, 90 NY2d 643, 652 [1997].) “[M]arital property should be ‘construed broadly in order to give effect to the “economic partnership” concept of the marriage relationship.’ By contrast, separate property— denoted as an exception to marital property—should be construed ‘narrowly.’ ” (Fields v Fields at 162-163 [citations omitted], quoting Price v Price.) Separate property is “property acquired before marriage or property acquired by bequest, devise, or descent, or gift from a party other than the spouse” (Domestic Relations Law § 236 [B] [1] [d] [1]). Separate property also includes “property acquired in exchange for or the increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse.” (Domestic Relations Law § 236 [B] [1] [d] [3].)
*962 Guided by these principles of law and those discussed, infra, the court makes the following findings and determinations regarding the equitable distribution of the marital assets.
Marital Residence
The marital residence is located in XXX. It was purchased during the marriage for $311,000, with the parties paying part of, and defendant’s parents contributing part of, the down payment. The house appraised for $425,000 in 2013. The purchase money first mortgage, originally in the principal amount of $300,000, has a current principal balance of $198,000, and a second mortgage principal balance of $48,000. The second mortgage was placed on the property in 2004 in the original principal amount of $97,062.51. This loan was used to consolidate other loans, with $71,003 disbursed to creditors, leaving net proceeds to the parties, after bank charges and statutory fees, of $19,844.88, which was deposited into their joint account. (Exhibit I, HUD Settlement Form, dated July, 26, 2005.) By decision and order dated January 13, 2013, the court, inter alia, directed defendant to pay plaintiff $2,100 per month, unallocated, from which plaintiff was to pay the expenses for the maintenance of the residence and the support of R.M.
Based upon the testimonial and documentary evidence, the court believes that defendant has diverted municipal pension income, employment income earned with his present private employer, and the additional work income earned as an independent contractor, all as shown on the parties’ joint income tax returns for 2010 and 2011 (exhibits 28, 29). Further, when defendant took early retirement from the municipality, he elected the option which pays out only during his lifetime, with no amount allocated for plaintiff as his surviving spouse.[5]
It is well established that equitable distribution of marital property does not necessarily mean equal distribution. (Duffy v Duffy, 84 AD3d 1151 [2d Dept 2011]; Michaelessi v Michaelessi, 59 AD3d 688 [2d Dept 2009].) The equitable distribution must be based on the circumstances of the particular case and the consideration of a number of statutory factors. (Domestic Relations Law § 236 [B] [5] [d].) The court has substantial discretion in fashioning an award of equitable distribution. Stated another way, “the trial court has substantial flexibility in fashioning an appropriate decree based on what it views to be *963 fair and equitable under the circumstances” (Mahoney-Buntzman v Buntzman, 12 NY3d 415, 420 [2009]).
In determining an equitable disposition of property the court must consider, inter alia, the wasteful dissipation of assets by either party. (Domestic Relations Law § 236 [B] [5] [d] [12]; Renck v Renck, 131 AD3d 1146 [2d Dept 2015].) Further, it has been repeatedly held that economic misconduct may properly be considered by the trial court. (Contino v Contino, 140 AD2d 662 [2d Dept 1988]; Di Bella v Di Bella, 140 AD2d 292 [2d Dept 1988]; Langdon v Langdon, 138 AD2d 358 [2d Dept 1988]; Mahon v Mahon, 129 AD2d 684 [2d Dept 1987].) The courts have long recognized that economic fault, which consists of dissipation or secreting of assets, or other conduct which unfairly prevents the court from making an equitable distribution of marital property, has generally been considered relevant to the distribution. (Owens v Owens, 107 AD3d 1171 [3d Dept 2013]; Blickstein v Blickstein, 99 AD2d 287 [2d Dept 1984].)
A spouse who alleges that the other engaged in waste and dissipation of marital assets bears the burden of establishing that conduct by a preponderance of the evidence. (Heymann v Heymann, 102 AD3d 832, 834 [2d Dept 2013]; Epstein v Messner, 73 AD3d 843, 846 [2d Dept 2010]; Raynor v Raynor, 68 AD3d 835, 838 [2d Dept 2009].)
Here, plaintiff has met her burden of proving, by a preponderance of the evidence, that the defendant committed wasteful dissipation of marital assets with regard to his financial support of a second family, and this constituted financial misconduct as related to marital assets. There can be no dispute that income received by a spouse during the marriage is marital property. (Domestic Relations Law § 236 [B] [1] [c].) In fact, defendant concedes that marital funds were used to support his second family. Plaintiff introduced into evidence examples of defendant’s diversions of marital income, from the parties’joint checking account, for A.S.’s rent, cable television bill, and other expenses. Although not easily quantified, the court believes that defendant’s conduct in dissipating marital funds for so many years during this long-term marriage justifies a finding that there should be a disproportionate distribution of the equity in the marital residence. (Kerley v Kerley, 131 AD3d 1124 [2d Dept 2015].) Clearly, the record supports that defendant’s conduct meets the test of factors 12 and 14 of Domestic Relations Law § 236 (B) (5) (d), respectively: i.e., the wasteful dissipation of marital property (factor 12); and any other factor *964 which the court shall expressly find to be just and proper, i.e., the so-called “wild card” factor (factor 14). In this regard, the court finds factors 12 and 14 are significant factors applicable to the disposition of the marital residence.
The court finds that it is fair and reasonable that plaintiff be awarded sole and exclusive title and possession to the marital residence located in XXX, with her entitlement to 100% of the equity. (Henery v Henery, 105 AD3d 903 [2d Dept 2013].) This is justified by the wasteful dissipation of marital assets by defendant, and the unilateral placing of his own interests above those of his rightful dependants.
To implement this distribution, defendant’s counsel shall include a provision in the judgment of divorce providing for the transfer of title to the marital premises from plaintiff and defendant, to plaintiff alone. This shall be accomplished by defendant executing a bargain and sale deed with covenant against grantor’s acts, and the ancillary documents required to be filed together with the recording of the deed. Defendant’s attorney shall prepare the transfer documents required to effectuate the conveyance of the marital residence, and defendant shall incur any and all expenses relative to the conveyance and the recording of the deed. In the event defendant fails to sign the deed within 30 days of the judgment of divorce being served upon him with notice of entry, the court directs the Westchester County Clerk to sign the deed in his stead upon presentation by plaintiff without further application to the court.
Upon the conveyance of title, plaintiff shall be solely responsible for the payment of the mortgages, real estate taxes and all other expenses relative to the upkeep and maintenance of the marital residence.
Defendant’s Tax Deferred Annuity
Defendant maintains a public agency tax deferred compensation plan/IRA (exhibit 22). On September 30, 2012, three months after the date of commencement, the account balance was $102,159.16 (exhibit 22). On September 30, 2015, the account balance was $108,769.51 (exhibit 22). Defendant testified that he made no post-commencement contributions to this fund. Thus, the later balance, representing a passive increase in the pension value, is subject to equitable distribution. (Campbell v Campbell, 280 AD2d 837 [3d Dept 2001].)
Given the court’s findings that defendant has wastefully dissipated assets, and engaged in conduct such that the court *965 should exercise its discretion in remedying defendant’s transgressions, the court directs that plaintiff’s entitlement to defendant’s tax deferred annuity shall be divided 65% plaintiff, and 35% defendant, with defendant receiving a credit for any amounts he contributed to this plan prior to the date of marriage. Should the trustee of this plan require a domestic relations order, or other documentation, to divide this account, then the parties shall share said expense 35% plaintiff, and 65% defendant.
Although not introduced into evidence by either party, plaintiff, in her demands, alluded to a supplemental fund she believed defendant may have accrued during his years working for the municipality from which he retired. To the extent such an account exists, plaintiff is hereby granted the right to make a postjudgment application seeking a distribution to her of this account, but leaves to another day the percentage to which she and defendant may be entitled.
Defendant’s Municipal Pension
As noted above, defendant retired in 2007 from a municipality’s employment after 20 years of service. His municipal retirement system benefits are in “pay status” with current gross benefits of $2,005 monthly, payable for the duration of his life only. (Defendant’s exhibit H.)
It is well settled that the portion of defendant’s pension accrued during the marriage is a marital asset subject to equitable distribution. (Kraus v Kraus, 131 AD3d 94 [2d Dept 2015].) This portion of defendant’s pension shall be divided equally. Since defendant began his employment two years prior to marriage in 2005, 90% of the pension (18 years of the 20 years from 1989 [date of marriage] to 2007 [date of retirement]) is subject to distribution.
The Majauskas formula (Majauskas v Majauskas, 61 NY2d 481 [1984]) is to be applied as follows:
18 years of service credit accrued during the marriage (nominator) -f by 20 years of total service credit (denominator) = 90% x 50% = 45% (plaintiff’s share).
Plaintiff’s distributive share of defendant’s pension shall be awarded by a domestic relations order (DRO). Any expense in the preparation of the DRO shall be shared 35% by plaintiff, and 65% by defendant.
Attorneys’ Fees
Plaintiff testified she incurred fees of $14,300 for the services of two attorneys prior to her proceeding pro se. The court previ *966 ously declined to award counsel fees on her pendente lite application. The court finds that there is likewise no cause to award counsel fees to plaintiff, given the parties’ respective incomes, and the relief afforded to her, as set forth above.
Defendant’s Demands
The Divorce
Plaintiff has been granted the divorce. Hence, this issue is moot.
Custody of R.M,
Denied as moot. R.M. is 19 years old, and has elected to reside with plaintiff.
Declaration that R.M. is Self-Supporting
Granted, for the reasons set forth above.
Recognition That the Family Court Support Order Preceded the Commencement of this Action
Denied, as not factually accurate.
Equal Distribution of the Net Equity in the Marital Residence
Denied, for the reasons set forth above.
Distribution of Net Proceeds from 2004 Second Mortgage
Denied, for failure of proof, and court’s findings, as set forth above.
Distribution of Pre-Tax Accounts
As to defendant’s accounts, see finding and determination set forth above. As to plaintiff’s pre-tax accounts, defendant offered no proof in regard thereto. This application is denied.
Sharing of Debt for IRS Deficiencies, 2010 and 2011
Defendant introduced into evidence a payroll deduction agreement (exhibit L, IRS Form 2159) that he entered into with the Internal Revenue Service in July 2012. The agreement provided that $600 per month was to be deducted from his salary at XXX, LLC and paid to the Internal Revenue Service, against an income tax liability in the amount of $5,505.89, for tax years 2010 and 2011, when the parties filed joint returns. Defendant seeks contribution from plaintiff toward this amount. However, defendant has failed to demonstrate how this deficiency was determined. In the tax years in issue, defendant and plaintiff were W-2 wage earners, except for defendant’s 1099 income during those two years for working in his private business, for which he was paid as an independent contractor.
*967 Given these facts, and the court’s other findings regarding his conduct during the marriage, the court finds no reason to grant him this relief. The application is denied.
Plaintiff’s Withdrawal of $3,100 from the Parties’ Joint Account on July 6, 2012
This application is denied in the court’s discretion, given defendant’s prior withdrawals from the same account to pay the expenses of A.S.’s household. This withdrawal by plaintiff occurred at or about the time of the commencement of the divorce, with the funds she withdrew being used to pay her then attorney.
Award of Counsel Fees Due to Plaintiff’s Failure to Appear
As claimed by his attorney as part of defendant’s demands, it is alleged that plaintiff failed to appear on May 16, 2013, October 21, 2013, February 4, 2015 and March 9, 2015. His attorney estimated these appearances consumed nine hours of attorney’s time, at the rate of $350 per hour. No proof was offered by defendant relative to the missed appearances or the value of his attorney’s services, and actual time spent on the dates in issue. Accordingly, the application is denied.
Conclusion
The court has considered the additional contentions of the parties not specifically addressed herein. To the extent any relief requested by either party was not addressed by the court, it is hereby denied.
Defendant’s attorney is directed to settle, on notice to plaintiff, the findings of fact, conclusions of law and judgment of divorce in accordance with this decision and order, within 30 days of its service upon plaintiff with notice of entry. Any proposed counter judgment shall be submitted in accordance with 22 NYCRR 202.48 (c) (2). In connection with this obligation, plaintiff is directed to the Office of the Self Represented, located in the 9th Floor Law Library of the Westchester County Courthouse, if she requires legal assistance in finalizing this proceeding.

. This decision is written without the benefit of a trial transcript.

. Defendant’s attorney, on the day prior to the introduction of exhibit B, represented to the court that the XXX support petition was filed prior to the date of commencement of this action. This proved to be inaccurate.

. In recognition of the XXX Family Court order, this court, in fixing defendant’s pendente lite obligations to plaintiff and R.M., allowed defendant a credit for the amount of the Family Court order, as required pursuant to Domestic Relations Law § 240.

. 1. Income and property of each party at the time of the marriage, and at the time of commencement of the action;
2. Duration of the marriage and age and health of the parties;
3. Need of custodial parent to occupy or own the marital residence;
4. Loss of inheritance and pension rights;
5. Loss of health insurance benefits upon dissolution of the marriage;
6. Any award of maintenance;
7. Direct and indirect contributions;
8. Liquid or non-liquid character of the property;
9. Probable future financial circumstances of the parties;
10. Difficulty of valuing marital assets;
11. Tax consequences to each party;
12. Wasteful dissipation of assets by either spouse;
13. Transfer in contemplation of action; and
14. Any other factor which the court shall expressly find to be just and proper.

. During the trial the court ordered defendant to sign an authorization designating plaintiff (exhibit J), rather than the parties’ children, as the beneficiaries on his 457 tax deferred account.