BOWMER et al., Appellants,

v.

DETTELBACH et al., Appellees.

[Cite as *Bowmer v. Dettelbach* (1996), 109 Ohio App.3d 680.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–161.

Decided March 8, 1996.

*Brian J. Hoch,* for appellants.

*Michael S. Katz* and *Truman Greenwood,* for appellees.

*Per Curiam.*

This case is on appeal from the May 15, 1995 judgment of the Lucas County Court of Common Pleas, which denied relief to Edwin and Patricia Bowmer, appellants. On appeal, the Bowmers assert the following assignments of error:

"I. The trial court improperly determined that California state law applied to the legal issues presented below.

"II. The trial court improperly determined that California's 'anti-deficiency statutes' (Cal.Code Civ.P. 580[a]–580[d] ) preclude appellant's first and second claims stated in the amended complaint.

"III. The trial court improperly determined that there was insufficient evidence to create a genuine issue of fact in support of appellant's third claim (fraudulent inducement) and fourth claim (bad faith waste) as stated in the amended complaint."

This action was filed by Edwin and Patricia Bowmer against Marvin and Shirley Dettelbach on January 12, 1994. The complaint was subsequently amended on November 1, 1994. The Bowmers asserted four claims for relief: two claims for monies owed by the Dettelbachs following their default on two promissory notes, both in the amount of $60,900; fraud in the inducement of those loans; and bad faith waste of the property securing the notes. The Dettelbachs moved for summary judgment on the basis that the claims are

barred under California law. The lower court granted the motion and dismissed the action. The Bowmers appeal.

The evidence presented in support of summary judgment is as follows. Prior to the litigation in Ohio, the Bowmers had never met the Dettelbachs or communicated with them. Marty Dettelbach, the son of the Dettelbachs, and Margo Dettelbach, Marty's spouse, submitted a written offer to purchase the Bowmer home in Poway, California in August 1990 for $609,000. The original offer was rejected, but telephone negotiations continued between Edwin, who had moved to Illinois, and Marty. At first, Edwin believed that Marty was purchasing the home. Later, when Edwin inquired as to how Marty would be able to finance the property, Edwin learned that Marty's parents, Marvin and Shirley Dettelbach, were the actual purchasers. Edwin verified this fact by obtaining from Marty a copy of the power of attorney from his parents and a copy of their 1040 tax form, which was needed to verify their ability to finance the purchase.

The final agreement was to sell the house for $634,000. A financing agreement was signed by Marty as attorney-in-fact for the Dettelbachs. This agreement was not dated and was not executed by the Bowmers. It provided that the agreement was to be governed by California law. The agreement outlined the financing arrangements for purchasing the home. During his deposition, Edwin Bowmer stated that the agreement reflected the terms of what actually occurred. However, in an affidavit, he explained that during his deposition, he was referring solely to the financial aspect and not to the choice-of-law section.

Under the financing agreement, Marty was to obtain a $487,200 bank loan, with the property as security for the loan. Marty would also borrow $60,900 from the Bowmers, with the property as security. An additional $60,900 was to be deposited into escrow by Marty at the time of closing. Afterward, the Bowmers were to return these funds to Marty and he would execute a second $60,900 promissory note for this amount, secured by the property. The Bowmers were to give Marty $35,000 after closing ($10,000 of which represented a carpet allowance). Marty would sign another promissory note for $25,000 for purposes of building a pool, also secured by the property. This fourth loan was to be for a shorter term because the Bowmers needed the money by April 1991 to pay the anticipated capital gain tax due as a result of the sale of the home. The last two promissory notes were signed the next day at the offices of the Bowmers' attorney. This process was done at Marty's request so that he would be able to obtain one-hundred-percent financing. To Edwin's knowledge neither the bank nor the escrow agency knew of the third and fourth loans.

The fourth note matured first and was not paid. Marty sent two checks drawn on his account, both of which were dishonored by the bank. In December 1991, Marty ceased making payments on the other two loans because the Bowmers had

initiated nonjudicial foreclosure proceedings on the fourth note. Eventually, Marty was evicted from the home, it was sold, and the Bowmers repurchased the home.

This action was instituted in Ohio against the Dettelbachs to recover monies owed on the second and third promissory notes.

The Dettelbachs filed for summary judgment arguing that California law governed the issue because of the choice-of-law clause in the financing agreement or because of Ohio's choice of law principles. They further argued that under California law this claim is either not actionable or time-barred.

The trial court granted the motion. The court found that the parties did not make a choice-of-law, inasmuch as the Bowmers never signed the financing agreement and Edwin attested to the fact that he did not intend to do so. However, applying Ohio's common-law choice-of-law principles, the court determined that California had the most contacts with the real estate transaction and, therefore, California law controls. Applying California law, the court determined that this action was not timely filed and that, alternatively, the antideficiency statutes bar recovery because there is insufficient evidence to create a genuine issue of fact as to whether the Dettelbachs acted fraudulently or committed bad faith waste.

■■■■ We note at the onset that none of the documentary evidence in this case was submitted in accordance with Civ.R. 56(E). Civ.R. 56(C) controls the materials that the court may consider when it determines whether there are any triable issues of fact. The rule directs the court to consider only "the pleading[s], depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action." Thus, any documents must be accompanied by a personal certification that they are genuine in order for them to be admissible evidence for summary judgment purposes. *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 222–223, 515 N.E.2d 632, 634–635 (the court should not consider uncertified copies of an employee manual under Civ.R. 56[C]; such documents must be incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56[E]). Where the opposing party fails to object to the admissibility of the evidence under Civ.R. 56, the court may, but need not, consider such evidence when it determines whether summary judgment is appropriate. *Watts v. Watts* (Mar. 18, 1994), Lucas App. No. 93–200, unreported, 1994 WL 88765; *Bergquist v. Med. College of Ohio* (June 10, 1988), Lucas App. No. L–87–327, unreported, 1988 WL 60970; *Hersch v. E.W. Scripps Co.* (1981), 3 Ohio App.3d 367, 373, 3 OBR 430, 436, 445 N.E.2d 670, 677–678; and *Brown v. Ohio Cas. Ins. Co.* (1978), 63 Ohio App.2d 87, 90–91, 17 O.O.3d 267, 268–269, 409 N.E.2d 253, 255–257.

Since the trial court considered all of the documentary evidence in this case, and no one has objected on appeal, we will do so as well.

In reviewing a summary judgment, this court must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

On appeal, the Bowmers first argue that the trial court erred as a matter of law when it determined that California, rather than Ohio, law controls in this case. The Bowmers argue that there were multiple state contacts in this case and that the court should follow the "intended law rule" and apply Ohio law since it upholds the contract.

For reasons which follow, we find that the trial court erred as a matter of law when it determined that there was a conflict-of-law issue and that California law applies.

Restatement of the Law 2d, Conflict of Laws (1971) 558, Section 186, provides that if the parties have not contracted to have the law of a certain jurisdiction control, such issues are to be determined by "the law selected in accordance with the rule of Sec. 188." That section provides:

"(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Sec. 6.

"(2) In the absence of an effective choice of law by the parties (see Sec. 187), the contacts to be taken into account applying the principles of Sec. 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Restatement of the Law 2d, Conflict of Laws (1971) 10, Section 6, provides as follows:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

However, in some areas of the law where fact patterns are predictable, the American Law Institute predetermined which state would have the most significant relationship to the issues involved, subject to modification by the corrective feature of Section 6 of the Restatement. *Union Station Restaurant, Inc. v. N. Am. Co. for Prop. & Cas. Ins.* (1977), 59 A.D.2d 270, 399 N.Y.Supp.2d 497; Restatement of the Law 2d (1971) 586, Conflict of Laws, Title B, Introductory Note; and Scoles & Hay, Conflict of Laws (1984) 39, Section 2.15.

With respect to the law of contracts, there is a special section which sets forth a predetermined rule regarding the choice of law for issues involving contracts for the repayment of money lent. That section reads as follows:

"The validity of a contract for the repayment of money lent and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that repayment be made, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in Sec. 6 to the transaction and the parties, in which event the local law of the other state will be applied." Restatement of the Law 2d, Conflict of Laws (1971) 619, Section 195.

This rule is to be applied irrespective of whether the loan is secured by a mortgage on land located in another state. Section 195 of the Restatement at 620, Comment *a*, and *Charter Fin. Co. v. Henderson* (1973), 15 Ill.App.3d 1065, 1069, 305 N.E.2d 338, 341.

While the Ohio Supreme Court has not specifically adopted Section 195 of the Restatement, it has adopted Section 188. See *Gries Sports Ent., Inc. v. Modell* (1984), 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807, syllabus. Another appellate court has also adopted Section 193. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1990), 69 Ohio App.3d 52, 590 N.E.2d 33 (adopting Section 193 regarding

contracts for fire, surety or casualty insurance followed). Therefore, we believe that the Ohio Supreme Court would also adopt Section 195 as well.

In the case before us, the trial court and the parties categorized the legal issue in this case as the breach of a contract to purchase property. We disagree with this categorization. The Bowmers' complaint was based on claims of default of a promissory note, fraud in the inducement, and bad faith waste.

With respect to the claim involving the default on the promissory notes, Section 195 of the Restatement requires that the law of the state of repayment controls if there is a conflict between that state and the forum state.

In this case, one note provides that it is to be paid to the Bowmers at their Illinois address and the other provides that it was to be paid "at such a place as Payee may direct." There is no evidence in the record to indicate where the payments on this note were actually being sent. However, since the Bowmers were living in Illinois, it is reasonable to infer that the payments were being mailed to their residence in Illinois.

The next step under the Restatement analysis is to determine whether any other state has a more significant relationship with the issue. Illinois is also the domicile of the Bowmers, the place where one end of the telephone negotiations to purchase the property took place, and where the default occurred. Ohio's only relationship to this case is that the Dettelbachs are domiciled here. California's contacts with the case are that it is the place where the property is located, where the promissory notes were executed, and where the nonjudicial foreclosure action regarding the $25,000 note was instituted.

We conclude that the state with the most significant contacts is Illinois because it is the place where repayment on the notes was to be made. After considering the policies of Section 6 of the Restatement, we find that the California and Ohio contacts are minimal.

The comments following Section 195 of the Restatement indicate that the location of the property securing the promissory note is irrelevant. Therefore, the fact that the property is located in California is insignificant. Another California contact was the foreclosure action regarding the $25,000 note. Since the two notes at issue in this case were not part of the nonjudicial foreclosure action in California, that contact is irrelevant. The only remaining California contact is that it is the state where the notes were executed. This contact is insignificant in this case. Likewise, the Ohio contact (Dettelbach's domicile) is insignificant.

Accordingly, we find that the trial court erred as a matter of law when it determined that California law should be applied to the first claim in this case. If there is any conflict of law in this case, it must be between Ohio and Illinois law.

■ With respect to the Bowmers' second and third claims for relief, there is nothing in the record which suggests that there is a conflict between California, Illinois, and Ohio law regarding the fraud in the inducement and waste claims. Therefore, the trial court erred in applying California law to these issues as well.

■ Furthermore, the fraud and waste claims were made as defenses to application of California's antideficiency statute. Since we have eliminated application of California law, there appears to be no need to address these claims. Nonetheless, we note that if conflict-of-laws rules must be applied to the fraud in the inducement claim, Illinois law would control. Section 201, Restatement. With respect to the waste claim, if there was a conflict between the laws, California law would control. Section 147, Restatement.

The Bowmers' first assignment of error is well taken.

In their second assignment of error, the Bowmers argue that under California common law, a foreign antideficiency statute at the situs of the mortgaged property does not protect the mortgagee from a deficiency action in the forum.

This assignment of error is rendered moot as a consequence of our ruling on the first assignment of error and is, therefore, not well taken.

■ In their third assignment of error, the Bowmers argue that the trial court erred in finding that there was no evidence to support the Bowmers' claims of fraud or bad faith waste.

The fraud claim concerns the representations Marty made to the Bowmers to cause them to believe that his parents were purchasing the property, which the Bowmers assert induced them into executing the promissory notes. The trial court found that there was no evidence that the Dettelbachs intended to deceive the Bowmers. However, the real issue is whether Marty Dettelbach intentionally deceived the Bowmers while he was acting as an agent for the Dettelbachs.

Upon a review of the limited evidence presented on summary judgment, we find that there is no evidence which proves that the Dettelbachs were not the actual purchasers. Thus, there is no evidence of any fraudulent representation.

■ With respect to the bad faith waste claim, the trial court concluded that there was no evidence that the Dettelbachs committed the alleged waste. Once again, the trial court ignores the real issue in the case, which was whether the Dettelbachs were liable for the waste committed by Marty, who was in possession of the home. We need not address the issue of whether the Dettelbachs would be liable in such a case because there is evidence in the record that a judgment against Marty and Margo Dettelbach for triple the amount of these damages has been satisfied. Thus, the Bowmers have already recovered their losses from damage to the property.

Therefore, we find the Bowmers' third assignment of error not well taken.

Having found that the trial court committed error prejudicial to the Bowmers, its judgment is reversed insofar as it granted summary judgment of the Dettelbachs with respect to the Bowmers' first claim for relief. In all other respects, the trial court's judgment is affirmed. This case is remanded to the trial court for resolution of the first claim for relief under the applicable state law. Pursuant to App.R. 24, the parties are hereby ordered to equally share the court costs incurred on appeal.

*Judgment accordingly.*

HANDWORK, ABOOD and SHERCK, JJ., concur.