JOURNAL ENTRY AND OPINION
Relators, Kenneth Pund, Brenda Pund, Richard Miller and Geraldine Miller ("the Residents"), live in the Village of Walton Hills on properties that abut Wight Oaks Drive. They seek a writ of mandamus to compel respondents, the Street Commissioner, the Mayor and the Village ("the Village"), to maintain Wight Oaks Drive.
 In order to be entitled to a writ of mandamus, relator must show (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.[1]
The Village asserts that: it does not have a clear legal duty to maintain Wight Oaks Drive; the Residents do not have a corresponding clear legal right to have Wight Oaks Drive maintained by the Village; and the Residents have an adequate remedy in the ordinary course of the law.
R.C. 723.01 provides:
 Municipal corporations shall have special power to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code [pertaining to lift bridges], the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance. (Emphasis added.)
Villages are municipal corporations.[2]
The Supreme Court of Ohio has recognized mandamus as the remedy for enforcing the duty of townships to maintain roads and streets.
 1. Under the provisions of [General Code] Sections 3370, 3374-2 and 3375, General Code, township trustees are charged with the duties to repair and drag township roads and to cut all brush, briers and weeds growing along such public highways.
2. These provisions are mandatory.
 3. The duties enjoined thereby may be commanded by a writ of mandamus.[3]
The duty of townships is comparable to those of municipal corporations,[4] and we agree, in light of the comparable statutory origins, mandamus is the appropriate remedy to compel a village to maintain a street.
The Village contends, however, that it has no duty to maintain Wight Oaks Drive, because it is not a dedicated street. "Land may be dedicated to public uses for roads or streets, by conforming to the statutory requirements, or in accordance with the rules of the common law. Either mode is equally efficacious."[5] The Village correctly observes that the Residents do not assert statutory dedication as a basis for relief. As a consequence, we must consider whether the evidence supports the Residents' contention that the circumstances support the conclusion that a common-law dedication has occurred.
 To constitute a valid dedication of a street or highway at common law, there must be not only a dedication to public uses by the owner, but also an acceptance of such dedication by the public, and these may be shown by the acts and declarations of the parties and the surrounding circumstances.[6]
In more recent years, other appellate courts have concluded that, in order to maintain a claim for common-law dedication, the party asserting the claim must demonstrate three elements:
 A common-law dedication can be proven upon the showing of the following three elements: (1) the existence of an intention on the part of the owner to make such dedication; (2) an actual offer on the part of the owner, evidenced by some unequivocal act, to make such dedication; and (3) the acceptance of such offer by or on behalf of the public.[7]
We conclude that the evidence before this court demonstrates that a common-law dedication occurred and that the Residents are entitled to relief in mandamus.
By prior entries, this court: substituted Marlene Anielski, Mayor of the Village of Walton Hills, as a party respondent for Edward L. Thellmann; converted the motion to dismiss filed by the Village into a motion for summary judgment; and granted the Residents' request for leave to file additional evidence and reply to the response of the Village to the Residents' motion for summary judgment until November 9, 2001.
 Before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.[8]
In State ex rel. Spencer v. E. Liverpool Planning Comm.,[9] Spencer filed an action in mandamus to compel the planning commission to institute an action to strike an illegal plat representing a transfer of property.
 After the court of appeals granted an alternative writ, the planning commission filed a memorandum in opposition. Attached to the memorandum were several unattested exhibits and an affidavit. Spencer filed a memorandum in response to the planning commission's memorandum. The court of appeals converted the parties' memoranda into motions for summary judgment and gave them time to file additional evidence. Spencer subsequently filed a memorandum in opposition to the planning commission's summary judgment motion and in support of his own summary judgment motion. The court of appeals granted the planning commission's motion for summary judgment and denied the writ.[10]
The Supreme Court reversed the court of appeals and noted:
 On remand, the parties should file evidence which comports with Civ.R. 56(C), i.e., "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact," instead of relying on unsworn statements of counsel in memoranda. See State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn. (1995), 72 Ohio St.3d 94, 97, 647 N.E.2d 788, 792. While the court of appeals may consider evidence other than that listed in Civ.R. 56 when there is no objection, it need not do so. See, e.g., Bowmer v. Dettelbach (1996), 109 Ohio App.3d 680, 684, 672 N.E.2d 1081, 1084.[11]
In this action, the filings of the Village include various attachments which are not authenticated. Despite the Residents' objections to these attachments in their reply and notice of filing of additional evidence of November 9, 2001, the Village has not supplemented its filings in order to conform to the standards of Civ.R. 56(C). However, other evidence in the record is dispositive of this action and consideration of the materials attached by the Village would not affect the result in this action.
In 1965, the owners of Wight Oaks Drive executed and the recorder for Cuyahoga County filed a dedication plat in which they "dedicate[d] Wight Oaks Drive for street and other public uses."[12] This plat was "approved for record only by the Planning and Zoning Commission of the Village of Walton Hills." The arguments by the Village that this plat does not establish "(1) the existence of an intention on the part of the owner to make such dedication; [and] (2) an actual offer on the part of the owner, evidenced by some unequivocal act, to make such dedication"[13] are unpersuasive. The filing of the dedication plat by the owners is an unequivocal expression of the intention and offer to dedicate Wight Oaks Drive as a public street. The dispositive issue in this action, therefore, is: whether the Village accepted the dedication.[14]
 [T]he actions of the municipal authority can also amount to an acceptance of a common-law dedication. The Ohio Supreme Court found that an acceptance of land dedicated as a street for public use could be implied as "a result of the authorities taking some positive action such as the actual improvement of a street or road." Thus, acceptance can be manifested by improvements to or maintenance of a street or road * * *.[15]
The record reflects a long-term pattern of positive action by the Village to maintain Wight Oaks Drive.
Attached to the Residents' reply to the Village's response to their motion for summary judgment is the affidavit of Mark Wilhelm, who worked in the Service Department of the Village from 1975 until 1998 and was a Street Commissioner from 1982 to 1998. He was responsible for overseeing the maintenance of roads,[16] and Wilhelm averred:
 I personally performed, directed, was involved in, and observed the maintenance of Wight Oaks Drive during my employment with the Village. At the time I was originally employed by the Village in 1975, Wight Oaks Drive was being maintained by the Village. During my employment with the Village, the Village maintained Wight Oaks Drive on a regular basis with its equipment and employees. During those years of maintenance by the Village, a Village of Walton Hills truck, operated by Village employees, went out to Wight Oaks Drive and dropped fresh stone in depressions or holes which developed in the road bed on a regular basis, usually within a short time after they developed, and on average of 4/6 times a year. During those years of maintenance by the Village, on every day that it snowed enough to require plowing, a Village of Walton Hills truck with a snowplow attached went to Wight Oaks Drive early in the morning and plowed the length of Wight Oaks Drive. On some days when it snowed or the road became icy, the Street Department employees of the Village would also spread cinders on Wight Oaks Drive. On occasion, during heavy snows, the Street Department employees of the Village would return to plow later in the day. Additionally, at times when vegetation was growing along the sides of Wight Oaks Drive, employees of the Village Street Department were sent out to trim the trees and growth, in order to keep the roadway open for travel and so that other Village maintenance vehicles and emergency vehicles could pass through to maintain the roadway and, if necessary respond to any emergency. From time to time, the Village Street Department employees were instructed to take a tractor with a blade attached behind to Wight Oaks Drive and use it to clean out the culverts on both sides of the road. That culvert cleaning did not occur on an exact schedule, but it was done as needed, usually once a year. On at least one occasion, which I recall being during the time that I was Street Commissioner, Mr. Miller, a resident of Walton Hills who was in the construction equipment business, lent a bulldozer to the Village to use for maintenance of Wight Oaks Drive at no cost, because the Village did not have that equipment available to it at that particular time. I operated the bulldozer to re-grade and maintain Wight Oaks Drive.[17]
Wilhelm also averred that he was instructed to discontinue maintenance of Wight Oaks Drive some time in 1997.[18]
The affidavits of various residents corroborate Wilhelm's testimony that the Village maintained Wight Oaks Drive since 1973, 1993, 1989 and 1975, respectively. The Village contends that these affidavits are self-serving and rely on hearsay, but the affidavits do contain testimony of their personal observations of the maintenance of Wight Oaks Drive by the village which is consistent with the facts in Wilhelm Affidavit. Wilhelm's successor as street commissioner, Daniel Stucky, also testified during his deposition that, since his employment in the service department of the Village in 1979, Village workers using Village equipment would trim trees to keep the drive open, fill potholes with gravel and plow snow.[19]
The record in this action requires the conclusion that the Village maintained Wight Oaks Drive continuously for more than twenty-one years. "Title by prescription to a public street can be shown only by adverse use by the public, under a claim of right, and uninterrupted for twenty-one years."[20] As a consequence, we hold that the Residents have met their burden of demonstrating that the street commissioner, the mayor and the Village have a clear legal duty to maintain Wight Oaks Drive and that the Residents have a corresponding clear legal right to have Wight Oaks Drive maintained by the Village.
The Village also argues that the Residents have an adequate remedy in the ordinary course of the law by filing a "lawsuit" in the court of common pleas but it does not identify the cause of action which would effect this remedy. The Residents have, therefore, met all three criteria for relief in mandamus.
We grant the Residents' motion for summary judgment, deny the motion for summary judgment of the Village and order the Street Commissioner, the Mayor and the Village to maintain Wight Oaks Drive. Respondents shall pay the court costs. The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ.R. 58(B).
Writ allowed.
DIANE KARPINSKI, ADM. J., and KENNETH A. ROCCO, J., CONCUR.
[1] State ex rel. Harris v. Rhodes (1978), 54 Ohio St.2d 41, 42,374 N.E.2d 641. (Inside citation omitted.)
[2] R.C. 703.01(A).
[3] State ex rel. Rogers v. Taylor (1949), 152 Ohio St. 241,89 N.E.2d 136, syllabus. See, also, State ex rel. Simms v. York Twp.Trustees (July 14, 2000), Athens App. No. 99CA39 unreported (mandamus lies to compel a township to keep in good repair a dedicated township road).
[4] R.C. 5571.02 formerly G.C. 3370.
[5] Lessee of the Village of Fulton v. Mehrenfeld (1858), 8 Ohio St. 440,444.
[6] Mehrenfeld, supra, paragraph 6 of the syllabus. (Emphasis in original.)
[7] Neeley v. Green (1991), 73 Ohio App.3d 167, 170, 596 N.E.2d 1052. (Inside citation omitted.)
[8] State ex rel. Spencer v. E. Liverpool Planning Comm. (1997),80 Ohio St.3d 297, 298, 685 N.E.2d 1251. (Inside citation omitted.)
[9] Id. 
[10] Id. at 297.
[11] Id. at 301.
[12] Plaintiffs' Exh. 1.
[13] Neeley, supra, n. 7.
[14] Compare Eggert v. Puleo (1993), 67 Ohio St.3d 78, 616 N.E.2d 195. In Eggert, the county recorder filed a plat which included a proposed public roadway in a proposed subdivision.
 Even though the municipal corporation holds the fee of the land upon which the street is to be built upon approval and recording of the plat, the land is still in the care and control of the developer until the street is completed in accordance with specifications set forth in the plat. The proposed street does not become a public street until the street is accepted by the municipal corporation. It is at that point, upon acceptance, that the care, supervision, and control of the street become the responsibility of the municipal corporation. (See R.C. 723.01.) Prior to acceptance by the municipal corporation, the street is not a public street, but is only a proposed public street.
Id. at 84 (footnote deleted).
[15] Neeley, supra, at 171. (Inside citation omitted.)
[16] R.C. 735.32 provides:
Under the direction of the mayor or other chief executive officer of a municipal corporation, the street commissioner, or an engineer, when one is provided by the legislative authority, shall supervise the improvement and repair of streets, avenues, alleys, lands, lanes, squares, wards, landings, market houses, bridges, viaducts, sidewalks, sewers, drains, ditches, culverts, ship channels, streams, and watercourses. Such commissioner or engineer shall also supervise the lighting, sprinkling, and cleaning of all public places, and shall perform such other duties, consistent with the nature of his office, as the mayor or other chief executive officer requires.
[17] Wilhelm Affidavit, par. 6.
[18] Wilhelm Affidavit, par. 7.
[19] Stucky Deposition, pp. 32-40.
[20] RR. Co. v. Village of Roseville (1907), 76 Ohio St. 108,81 N.E.2d 178, paragraph 4 of the syllabus (considering whether a street was established by common-law dedication).