PER CURIAM OPINION
{¶ 1} This action in prohibition is presently before this court for disposition of the motion for summary judgment of respondent, Judge Ronald J. Vettel of the Ashtabula County Court of Common Pleas. As the primary basis for his motion, respondent states that he is entitled to prevail on the single claim of relator, Jennifer L. McGhan, because the facts of this matter can only be construed to support the conclusion that he has the *Page 2 
requisite jurisdiction to hear the underlying custody dispute. For the following reasons, this court holds that the summary judgment motion is well taken.
 {¶ 2} A review of the evidentiary materials attached to respondent's motion and relator's brief in opposition indicates that, although certain factual disputes may exist as to background matters, none of those disputes are material to the legal questions raised in this action. The ensuing statement of the case is a synopsis of the undisputed facts as gleamed from both sets of evidentiary materials.
 {¶ 3} The subject matter of the pending proceeding before respondent concerns the legal custody of two minor children, Samantha Nicole Bonds and Julianna Lauren Bonds. Both of these minors were born as issue of the marriage between relator and Christopher M. Bonds ("Bonds"). After they had been married for approximately seven years, relator and Bonds were granted a "total" divorce in the Superior Court of Camden County, Georgia. At the time of the divorce in May 2006, Samantha was five years old and Julianna was two years old. As part of the final divorce decree, relator and Bonds were technically given joint custody of the two children; however, relator was designated as the primary physical custodian for both. Bonds was granted "liberal" visitation rights consistent with their separation agreement.
 {¶ 4} Even though relator and Bonds had resided in Georgia during a significant portion of their marriage, Bonds decided immediately after their separation to move to Ashtabula County, Ohio. Similarly, within two months of the entry of the divorce, relator chose to move herself and the two children to Kalkaska County, Michigan. According to her, she made the move because Bonds had informed her that he ultimately intended to move to Michigan, and that he could assist her there in raising their children despite the *Page 3 
fact that they had been divorced. Once relator had completed the move, though, Bonds changed his mind and told her that he planned to stay in Ohio. As a result, relator soon began to make plans to return to Georgia with the children; however, these new plans were delayed because she wanted to help an ailing relative who also lived in Michigan.
 {¶ 5} In October 2006, an incident took place in which the children at issue were found walking unattended outside relator's Michigan residence and near a convenient store. After taking steps to secure the children's safety, the store manager informed the local police department, who then contacted the county children's services board. This led to an investigation into both the "wandering" incident and the basic manner in which relator was maintaining the residence for the children.
 {¶ 6} Within three weeks of the foregoing incident, two separate legal actions were initiated in the Family Division of the Kalkaska County Probate Court. In the first case, Bonds filed a petition to enforce the visitation order of the Georgia divorce decree. In conjunction with the petition, Bonds moved for an ex parte order which would restrain relator from leaving the state of Michigan with the children. On November 1, 2006, the Kalkaska County court issued a judgment granting the motion and scheduling a hearing on whether a preliminary injunction was warranted. As part of that oral proceeding, the Kalkaska County judge heard statements from a county case worker regarding whether relator had been complying with directives from the children's services board. Based on these statements, the Kalkaska County judge told the case worker that a petition for the removal of the children should have already been filed.
 {¶ 7} The day after the hearing in the first action, the second Michigan case was initiated when the county children's services board brought its petition to take temporary *Page 4 
custody of both children from relator. After the order for the immediate removal of the children from relator's home had been rendered, a preliminary hearing on the board's petition was conducted on November 14, 2006. In light of the evidence presented, the Kalkaska County court specifically found that the conditions of the residence had been insufficient to adequately safeguard the two children from the risk of harm. Therefore, the court held that the board's petition had been "authorized" under Michigan law, and further ordered that the two children were to be released to Bonds as the natural father. Finally, the court noted in its judgment that Bonds was residing in the state of Ohio and that relator's visitation would have to take place at that location.
 {¶ 8} During the same time frame in which the "children's services" action was going forward, additional proceedings were also held in the Bonds enforcement action. These proceedings resulted in a separate judgment in which the Kalkaska County court expressly granted temporary custody of both children to Bonds. In rendering this order, the "enforcement" court noted the fact that the two minors had already been released to Bonds as part of the "children's services" case. The "enforcement" court also held that relator would be granted "parenting time" to the same extent that she had been awarded visitation in the "children's services" case.
 {¶ 9} Upon taking custody of Samantha and Julianna pursuant to the foregoing order in the enforcement action, Bonds immediately moved them in November 2006 to his residence in Ashtabula County, Ohio. Both children have continuously remained in Bonds' custody at the Ohio location from that time until the date of the institution of this original action in late May 2008. At some point during the ensuing months following the change of custody, the Michigan "children's services" case was dismissed in its entirety. *Page 5 
Nevertheless, the Michigan "enforcement" action remained pending during the first eight months of 2007, even though no new significant proceedings were held by the Kalkaska County court.
 {¶ 10} Beginning in March 2006, Bonds filed a series of three actions concerning the custody of the children in the Ashtabula County Court of Common Pleas. The first of these new proceedings was brought in the Juvenile Division of that court, and began when Bonds submitted a notice of the filing of the Georgia divorce decree and a motion for a permanent modification of his and relator's parental rights. On the same date that the notice and motion were filed, a juvenile court magistrate issued an order which: (1) recognized the validity of the temporary custody order of the Michigan court; (2) named Bonds as the legal custodian of the children while that particular case was pending; (3) restrained relator from removing the minors from Ashtabula County and requiring that any extended visitation had to be supervised; and (4) scheduled a complete hearing on the Bonds pleadings for July 2007. However, upon conducting the hearing, the juvenile magistrate rendered a new decision in which it was recommended that the entire matter be dismissed for lack of jurisdiction. As the basis for her holding, the juvenile magistrate emphasized that the Michigan "children's services" case had never been transferred to Ashtabula County prior to its termination. After Bonds had submitted objections to the decision, the juvenile court judge issued a judgment which overruled the objections and adopted the recommendation to dismiss. This judgment was released on September 4, 2007.
 {¶ 11} Even before the Ashtabula juvenile court had had an opportunity to rule on the objections, Bonds instituted his second Ohio proceeding in the General Division of *Page 6 
the Ashtabula County Court of Common Pleas. Similar to his action before the juvenile court, Bonds' initial pleadings in his first General Division case consisted of a notice of the Georgia divorce decree and a motion for modification of the respective parental rights. In addition, Bonds also filed an emergency motion for placement of both children with him.
 {¶ 12} The foregoing "General Division" action was assigned to Common Pleas Judge Gary L. Yost. On September 5, 2007, only five days after the commencement of this second Ohio case, Judge Yost released a judgment which ordered the dismissal of this particular matter for lack of jurisdiction. At the beginning of his analysis, Judge Yost noted that a status conference had recently been scheduled in the Michigan proceeding in which Bonds had been awarded temporary custody. Judge Yost then concluded his analysis in the following manner: "It appears that the only reason the children have been living in the State of Ohio, is pursuant to the temporary order issued by the Michigan Court. Furthermore, the evidence giving rise to the original decision to award [Bonds] temporary custody would be available in Kalkaska County, Michigan, not here. Since the Michigan Court has already exercised jurisdiction, it would be inappropriate for this Court to attempt usurp that jurisdiction, at this time."
 {¶ 13} Exactly seven days after the second Ohio action had been dismissed, the status conference was held in the Michigan "enforcement" proceeding. On September 14, 2007, only two days after the status conference, the Kalkaska County court issued a new judgment in which it was noted that the children in question were presently residing with their father in the state of Ohio, and that none of parties interested in the custody of the minors were still living in the state of Michigan. Based upon this, the court held that *Page 7 
Bonds should be allowed to move for a change of custody in Ohio. Thus, the Kalkaska County court ordered the dismissal of Bonds' entire "enforcement" case on the grounds of a lack of jurisdiction.
 {¶ 14} On the same date that the last Michigan case was terminated, Bonds filed his third Ohio action regarding the custody of Samantha and Julianna. Like his second Ohio proceeding, the third action was brought in the General Division of the Ashtabula County Court of Common Pleas. Originally, Bonds' initial pleadings were placed under the same number of the case that Judge Yost had already dismissed eight days earlier. However, approximately two days before Bonds' third action was officially given to the clerk of courts, relator had submitted her own notice of the filing of the Georgia divorce decree. Relator's notice was placed under a separate case number and was assigned to respondent for all purposes. When Judge Yost received Bonds' latest pleadings on September 14, 2007, he released an written order that same date which consolidated Bonds' second Ohio action with relator's new case. Judge Yost further ordered that any future filing as to either proceeding had to be filed under the number for relator's case. As a result, Bonds' newest submissions were transferred to respondent's trial docket, and the entire custody matter went forward solely before him.
 {¶ 15} The initial pleadings in Bonds' third Ohio action were identical to those in his second Ohio case; i.e., Bonds submitted a notice of the filing of the Georgia divorce decree, an emergency motion for placement of both children with him, and a motion to modify the allocation of parental rights in the decree. In support of his various requests for relief, Bonds attached to his three submissions the affidavit of the attorney who had represented him in the Michigan "enforcement" proceeding. As part of this affidavit, the *Page 8 
attorney averred that the Kalkaska County judge had intentionally delayed the dismissal of the last Michigan case in order to give Bonds an opportunity to obtain a new custody order in Ohio. Bonds also attached to the pleadings his own affidavit, in which he stated that both children had resided with him in Ohio for the preceding ten months.
 {¶ 16} Immediately upon receiving and reviewing the pleadings for the third Ohio case, respondent rendered a judgment granting the emergency motion for placement of the children. Pursuant to this order, Bonds was again given temporary custody of both minors until further order of the court.
 {¶ 17} Even though the "temporary custody" judgment contained a reference to a scheduled hearing before a court magistrate, no significant decisions were made in the third Ohio action until March 28, 2008. At that time, respondent issued a new judgment in which he expressly held that he had the requisite jurisdiction to address the merits of Bonds' motion to modify the allocation of parental rights. As the underlying grounds for this holding, respondent found that: (1) neither Bonds nor relator were presently residing in Georgia, the state of original jurisdiction; (2) both children had been residing in Ohio with Bonds since November 2006; and (3) there was substantial evidence in Ashtabula County regarding the care, protection, training, and personal relationships of each child in question. The judgment further indicated that respondent had based his findings on the information provided in Bonds' initial pleadings and relator's notice of the existence of the Georgia divorce decree.
 {¶ 18} In light of the jurisdictional ruling, the foregoing judgment also stated that the prior order as to Bonds' temporary custody of the minors would remain in effect until a final decision on the motion to modify could be made. Respondent then scheduled a *Page 9 
trial on the motion for June 2008.
 {¶ 19} Approximately one month before the trial date, relator filed a pro se motion to dismiss Bonds' third Ohio custody action. Essentially, relator contested the propriety of respondent's earlier jurisdictional determination. According to relator, respondent did not have the authority to go forward on the custody dispute because Georgia still should be considered the home state of both children, as well as herself. In raising the "home state" issue, relator was challenging the factual findings upon which respondent had based his ruling. In addition, she argued that Bonds should not be allowed to litigate the custody dispute in Ohio because he had engaged in unjustifiable conduct during the course of the Michigan proceedings.
 {¶ 20} Although relator asserted multiple arguments in her motion to dismiss, she never gave respondent a complete opportunity to rule upon the motion's actual merits. Instead, only two weeks after submitting the motion, she brought the instant proceeding for a writ of prohibition to enjoin respondent from going forward in Bonds' present Ohio custody action. As the primary allegation in her sole claim for relief, relator maintained that respondent patently and unambiguously lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act to render a ruling on Bonds' pending motion to modify custody. As to this point, she alleged that jurisdiction would only lie in Georgia because no court in either Ohio or Georgia had determined that she and the two minors should no longer be considered residents of Georgia.
 {¶ 21} Respondent never filed an answer to the prohibition petition. Instead, he immediately moved this court for summary judgment under Civ. R. 56(C). In support of his legal arguments, respondent attached to his motion seven exhibits which consisted *Page 10 
of copies of various pleadings and judgments from the aforementioned actions in Georgia, Michigan, and Ohio.
 {¶ 22} In responding to the summary judgment motion, relator submitted twelve exhibits for this court's consideration. Like respondent, the majority of relator's exhibits were comprised of certain pleadings and judgments from the underlying proceeding and the five prior cases. In addition, she submitted copies of two transcripts of oral hearings which took place during the Michigan proceedings.
 {¶ 23} A review of the evidentiary materials of both parties indicates that none of the items have been presented in accordance with Civ. R. 56(C). That rule states that, in ruling upon a motion for summary judgment, a court can only consider any "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *." In applying this rule, the courts of this state have consistently held that if an exhibit or item of evidence does not fall within one of the cited categories of permissible materials, it can only be reviewed when it has been incorporated by reference into an affidavit which satisfies Civ. R. 56(E). See Skidmore Associates Co., L.P.A. v. Southerland (1993),89 Ohio App.3d 177. In light of this general precedent, this court has concluded that uncertified copies of legal documents are inadmissible for summary judgment purposes if it is not accompanied by an affidavit in which the affiant properly attests to the documents' authenticity.Nablach v. Cacioppo, 11th Dist. No. 2001-T-0062, 2002 Ohio App. LEXIS 83, at *8-9.
 {¶ 24} In submitting their respective exhibits in the instant action, neither side has attached to their summary judgment submission an affidavit concerning the authenticity of the copies. However, it should also be noted that the courts of this state have further *Page 11 
held that if the opposing party in the summary judgment exercise does not object to the lack of a proper affidavit, the decision as to whether the disputed materials still warrant consideration lies solely within the sound discretion of the disposing court. See Bowmer v.Dettelbach (1996), 109 Ohio App.3d 680. Therefore, since our review of the instant submissions shows that neither party has objected to any of the exhibits of the opposing party, this court must determine if those exhibits contain sufficient indicia of reliability to warrant their consideration.
 {¶ 25} In regard to this point, this court would first indicate that some of the items attached to relator's response, such as copies of judgments rendered in the underlying proceeding, were identical to some of the exhibits submitted by respondent. Second, we would emphasize that the parties' respective exhibits came from the same sources: i.e., the clerk of courts of the various courts in Georgia, Michigan, and Ohio. Third, and most importantly, our review of the various items demonstrates that they do not contain any markings or language which would raise any question as to their accuracy. Based upon these facts, we conclude that our summary judgment ruling can be predicated on the exhibits of both parties because they have the necessary characteristics to support the conclusion that they are reliable.
 {¶ 26} As was noted above, a comparison of the parties' respective evidentiary materials indicates that there are no genuine disputes regarding any material fact in this action. That is, there are no legitimate disagreements as to the reasoning or basis for respondent's decision, as set in his written judgment of March 28, 2008, that he had the requisite jurisdiction to proceed in the underlying case. Thus, the primary issue before this court is whether the undisputed facts support the legal conclusion that respondent's *Page 12 
jurisdictional determination was correct. As both sides aptly discuss in their respective submissions, our resolution of this question will turn upon the application of the Uniform Child Custody Jurisdiction and Enforcement Act, as delineated in R.C. Chapter 3127.
 {¶ 27} As the full title of the Act suggests, R.C. Chapter 3127 sets forth a series of standards and definitions for determining when an Ohio court has jurisdiction over a court of another state to issue a child custody decision. For example, R.C. 3127.15(A) governs the jurisdiction of an Ohio trial court to make an initial determination regarding the custody of a child. Specifically, the statute delineates four situations in which such a determination can be rendered in this state. The first of these situation is stated in R.C. 3127.15(A)(1):
 {¶ 28} "This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state."
 {¶ 29} In the instant matter, an initial custody determination as to Samantha and Jilianna had already been issued in the state of Georgia. As a result, Bonds had sought to invoke respondent's jurisdiction for the ultimate purpose of modifying the first custody ruling, which had named relator as the residential parent. Given these circumstances, respondent's jurisdiction in the underlying action could not have been achieved solely under R.C. 3127.15(A). Instead, respondent could only go forward if the provisions of R.C. 3127.17 had been met.
 {¶ 30} The latter statute delineates a two-part test for determining if an Ohio trial court has the authority to modify an earlier custody decision of a court of another state. *Page 13 
Under the first prong of the test, such a modification is only permissible if the Ohio court would have the jurisdiction to render an initial custody determination under subsection (A)(1) or (A)(2) of R.C. 3127.15. Pursuant to the second prong, the authority to modify will only lie if one of two possible scenarios exists. The second of these scenarios is set forth in R.C. 3127.17(B):
 {¶ 31} "The court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state."
 {¶ 32} In holding, as part of his March 28, 2008 judgment, that he could proceed on the pending motion to modify custody, respondent did not expressly refer to the two-prong standard for jurisdiction to modify under R.C. 3127.17. Nevertheless, his written judgment did contain factual findings which were clearly applicable to each of the two prongs. First, in regard to whether he would have the ability to make an initial custody ruling, respondent found that both children in question had been residing with Bonds in Ashtabula County from November 2006 until the present time. Even though respondent never specifically stated such, this finding supported the legal conclusion that Ohio was presently the home state of the children. Second, as to whether one of the two requisite scenarios existed under R.C. 3127.17, respondent further found that neither relator nor Bonds had continued to live in Georgia, the state of original jurisdiction.
 {¶ 33} As the primary basis for his summary judgment motion, respondent states that relator cannot satisfy the elements for a writ of prohibition because the evidentiary materials before this court establish that his jurisdictional analysis was correct. That is, he submits that the two requirements for jurisdiction to modify custody were met in this *Page 14 
instance because the findings in his judgment were supported by the undisputed facts of the underlying action. In response, relator focuses her legal argument upon the first prong of the standard under R.C. 3127.17; i.e., the requirement that an initial ruling as to custody could be made. Specifically, relator contends that, despite the fact that both children in the instant matter had resided in Ohio for over six months when Bonds' third custody action was brought, Ohio still should not be considered their home state because their presence in this state was based solely on the temporary custody order of the Michigan court in the "enforcement" action. In support of this point, she emphasizes that if Bonds had not been awarded temporary custody by the Michigan court, she would have taken both children back to the state of Georgia in late 2006.
 {¶ 34} As was mentioned above, R.C. 3127.15(A)(1) provides that an Ohio court has jurisdiction to render an initial ruling regarding child custody when this state was the home state of the child on the date the custody proceeding was filed. In turn, the term "home state" is defined in the following manner under R.C. 3127.01(B)(7):
 {¶ 35} "`Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding * * *. A period of temporary absence of any of them is counted as part of the six-month or other period."
 {¶ 36} By arguing that the foregoing definition has not been met when the child's six-month stay in Ohio is predicated upon a court order, relator is essentially contending that time spent in Ohio should only be counted for the "home state" determination when the original custodial parent voluntarily moved the child to this state. However, in light of the clear and unambiguous language of R.C. 3127.01(B)(7), this court concludes that *Page 15 
the statutory definition, in and of itself, does not condition the running of the six-month period upon the manner in which the child's residence in Ohio is established. Instead, the statutory definition only requires that the child actually live with a parent in our state for six consecutive months. Furthermore, in researching this matter, we have not found any prior case law in which R.C. 3127.01(B)(7) has been interpreted to only apply when the child's relocation to Ohio was based upon the custodial parent's own decision. To this extent, we hold that the fact that a child's residency in Ohio began as a result of a court order from another state does not preclude a finding that Ohio is the child's "home state" under the statutory definition.
 {¶ 37} In reaching this conclusion, this court would agree that R.C. 3127.01(B)(7) must be interpreted and applied in light of any other pertinent provisions in R.C. Chapter 3127. Upon reviewing the entire chapter, we would indicate that one such provision is R.C. 3127.22, which governs the effect of unjustifiable conduct upon the jurisdiction of an Ohio court. Subsection (A) of the statute generally states that any court of our state should decline to exercise its authority over a custody matter when the acts forming the foundation of its jurisdiction constituted unjustifiable conduct. Subsection (D) then goes on to define "unjustifiable" behavior to include "* * * conduct by a parent or that parent's surrogate that attempts to create jurisdiction in this state by removing the child from the child's home state, secreting the child, retaining the child, or restraining or otherwise preventing the child from returning to the child's home state in order to prevent the other parent from commencing a child custody proceeding in the child's home state."
 {¶ 38} Obviously, the purpose of the procedure in R.C. 3127.22 is to ensure that a parent does not use deceitful behavior to "create" jurisdiction in a court which might be *Page 16 
more apt to render a favorable decision concerning a custody matter. To this extent, it is evident that the Ohio General Assembly did not intend for a "home state" finding to be predicated upon unjustifiable conduct.
 {¶ 39} Nevertheless, the language of R.C. 3127.22(A) readily indicates that it is not necessary for a court to make an express finding of a lack of unjustifiable conduct in order to have jurisdiction over a custody dispute; i.e., a finding of unjustifiable conduct is only a reason for declining to exercise jurisdiction in a situation in which it would usually be proper to go forward. Hence, logic dictates that, unlike the basic question of subject matter jurisdiction, the issue of unjustifiable conduct can be waived if it is not asserted in a timely manner. In turn, it follows that, once a custody order has been rendered by one court, the procedure in R.C. 3127.22 cannot be employed in a second court to contest the validity of the original order. In other words, it must be assumed that, if applicable, the issue of unjustifiable conduct was raised and fully litigated in the first court before the original decision was made.
 {¶ 40} In light of the foregoing, this court concludes that an Ohio court could not refuse to enforce the custody order of the court of another state solely on the basis that unjustifiable conduct took place before the foreign court's jurisdiction was invoked. As a result, the provisions of R.C. 3127.22 do not place any limits on the authority of an Ohio court to predicate a "home state" finding upon the custody order of a court of a second state.
 {¶ 41} As an aside, it should be noted that relator's allegations regarding Bonds' behavior prior to the commencement of the two Michigan proceedings would not have been sufficient to show unjustifiable conduct on his part. In her motion to dismiss before *Page 17 
respondent, relator asserted that Bonds had acted improperly by going forward with the Michigan case even though he knew there were jurisdictional defects. She also alleged that he had engaged in deceptive behavior by luring her to the state of Michigan with a promise of raising the children together, and then deciding to remain in Ohio instead of also moving to that state.
 {¶ 42} As to both of the foregoing points, this court would indicate that a review of the evidentiary materials shows that the decision of the Michigan court was not based upon any action taken by Bonds. Specifically, the transcripts of the Michigan hearings demonstrate that, although the court order enjoining relator from leaving that state was entered as a result of a motion filed by Bonds, the decision to transfer custody of both children from relator to Bonds was predicated upon the Kalkaska County judge's inquiry into the investigation as to whether relator had subjected the children to possible harm by failing to provide proper care. As was noted above, after the Michigan judge heard the case worker's statements concerning relator's failure to comply with the directives of the children's services board, the judge stated that the board needed to take the proper steps to remove the minors from relator's custody. Therefore, the transfer of custody to Bonds was attributable to relator's own actions, not any devious conduct by Bonds.
 {¶ 43} As a final argument pertaining to the propriety of respondent's reliance on the temporary custody order in the Michigan "enforcement" case, relator submits that it was inappropriate for respondent to go forward when the courts in the two earlier Ohio actions had already been dismissed for lack of jurisdiction. In support of this argument, relator emphasizes that, as part of his final judgment in the first case before the General Division of the Ashtabula County Court of Common Pleas, Judge Yost indicated that the *Page 18 
Michigan temporary order was the sole reason why the two children had been residing in Ashtabula County since November 2006.
 {¶ 44} In regard to Judge Yost's legal analysis, our review of his judgment readily shows that his reference to the Michigan temporary order was not made as part of any determination as to whether Ohio was the children's home state. Rather, the reference was made only to support Judge Yost's conclusion that the case before him should not proceed because the "enforcement" action before the Michigan court was still pending. Thus, Judge Yost's decision to dismiss was not predicated upon any analysis under the Uniform Child Custody Jurisdiction and Enforcement Act, but was instead based upon a simple conflict of jurisdiction. To this extent, Judge Yost's decision could not have had any res judicata effect because it did not address the same basic issue as respondent's jurisdictional judgment. Moreover, as to the conflict of jurisdiction, this court would note again that the third Ashtabula County case was not filed before respondent until after the Michigan judge had expressly dismissed the separate "enforcement" action in that state.
 {¶ 45} The basic tenor of the foregoing discussion is also applicable to the court magistrate's decision in the Ashtabula County juvenile case. In recommending that the matter be dismissed, the magistrate held that the juvenile court did not have jurisdiction because the Michigan "children's services" action was never transferred to Ashtabula County. Given that the status of an action to remove a child from her parent would not affect the jurisdiction of an Ohio general division court to review a custody dispute, the magistrate's holding would simply be irrelevant to respondent's jurisdictional decision. In addition, although the magistrate's decision also contained a reference to the second *Page 19 
Michigan case, her analysis never addressed the legal effect of the temporary custody order. Accordingly, it would have been illogical for respondent to follow the decision in the Ashtabula County juvenile action because it had no application to the jurisdictional issue before him.
 {¶ 46} Consistent with the foregoing legal discussion, this court rejects relator's contention that, in determining whether Ohio was the children's home state pursuant to R.C. 3127.01(B)(7), respondent could not consider the time frame in which the children lived in Ohio under the Michigan temporary custody order. In implicitly concluding that a child's state of residency can be altered as a result of a court decision that a change of custody would be in the child's best interest, respondent not only acted consistently with the relevant provisions of R.C. Chapter 3127, but further proceeded in accordance with the general constitutional mandate that the judicial determinations of courts of another state must be afforded full faith and credit. See Holzemer v.Urbanski (1999), 86 Ohio St.3d 129, 132, citing Section 1, Article IV, United States Constitution. Simply stated, respondent merely enforced the judgment of a foreign court which facially appeared to have proper jurisdiction to issue a custody ruling. Hence, because respondent correctly determine that Ohio was presently the "home state" of the children in question, he had the requisite jurisdiction to make an initial custody ruling under R.C. 3127.15(A)(1).
 {¶ 47} As was previously discussed, the standard for determining if an Ohio court has the authority to modify a prior custody order has two prongs. Besides the "initial custody ruling" requirement, R.C. 3127.17(B) states that such jurisdiction can only exist when it has been found, by either a court of this state or another state, that the child and both parents no longer reside in another state. As part of his jurisdictional determination *Page 20 
in the underlying case, respondent found that neither of the parents, relator and Bonds, were still residing in Georgia, and that both children were also living in Ohio with Bonds. In now contesting this finding as part of her response to the summary judgment motion, relator essentially submits that respondent erred in failing to find that she is presently a resident of the state of Georgia. According to her, respondent's finding as to her state of current residence was not supported by the evidence which had been presented on the matter.
 {¶ 48} Unlike her argument as to the "home state" issue, relator's present point does not raise a pure legal question. Instead, she has asserted a factual point in which she contends that respondent's finding was in conflict with other materials that had been submitted with the original pleadings in the pending action. In considering the inherent distinctions between a pure legal question and a factual matter, this court has previously indicated that these two types of inquires cannot be resolved in the same manner in the context of a prohibition action. See Willoughby-Eastlake City School Dist. v. Lake Cty. Court of CommonPleas (Apr. 21, 2000), 11th Dist. No. 99-L-130, Ohio App. LEXIS 1758. However, in order to properly explain why the inquiries are treated differently, it is first necessary to review the basic nature of a prohibition claim.
 {¶ 49} Under Ohio law, a writ of prohibition will only lie when the relator can meet each of the following three elements: (1) the judicial officer or court is about to employ its judicial authority in a pending matter; (2) the intended use of the judicial power is not permitted under the law; and (3) the denial of the writ will cause an injury for which there is no adequately legal remedy. State ex rel. Feathers v.Hayes, 11th Dist. No. 2006-P-0092, 2007-Ohio-3852, at ¶ 9. Even though the lack of an adequate remedy is always *Page 21 
referenced as a necessary element of the writ, this court has consistently indicated that there are instances in which the writ can issue despite the fact that a viable alternative remedy exists. In determining whether such an instance has arisen in a given case, our analysis must focus upon the nature of the alleged jurisdictional flaw:
 {¶ 50} "As to the second and third elements for the writ, this court has emphasized that the absence of an adequate legal remedy is not necessary when the lack of judicial authority to act is patent and unambiguous, i.e., if the lack of jurisdiction is clear, the writ will lie upon proof of the first two elements only. * * * However, if the lack of jurisdiction is not patent and unambiguous, the fact that a party can appeal a lower court's decision bars the issuance of the writ because, when a court has general jurisdiction over the subject matter of a case, it has the inherent authority to decide whether that jurisdiction has been properly invoked in a specific instance." State ex rel. Godale v.Geauga Cty. Court of Common Pleas, 166 Ohio App.3d 851, 2006-Ohio-2500, at ¶ 6. (Citations omitted.)
 {¶ 51} Under the foregoing precedent, the distinction between certain forms of jurisdictional flaws is of critical importance. In attempting to delineate a basic standard for differentiating between the two types of flaws, this court has stated:
 {¶ 52} "In reviewing the case law on this particular point in prior cases, this court has noted that if there is no set of facts under which a trial court or judge could have jurisdiction over a particular case, the alleged jurisdictional defect will always be considered patent and unambiguous. On the other hand, if the court or judge generally has subject matter jurisdiction over the type of case in question and his authority to hear that specific action will depend on the specific facts before him, the jurisdictional defect *Page 22 
is not obvious and the court/judge should be allowed to decide the jurisdictional issue." State ex rel. The Leatherworks Partnership v.Stuard, 11th Dist. No. 2002-T-0017, 2002-Ohio-6477, at ¶ 19.
 {¶ 53} Therefore, if the jurisdictional decision involves the resolution of a factual dispute and the relator merely seeks to contest the trial judge's ruling on the dispute, the point cannot be litigated in the context of a prohibition action because the alleged lack of jurisdiction is not viewed as patent and unambiguous.Willoughby-Eastlake City School Dist., 2000 Ohio App. LEXIS 1758, at *11. The key to the analysis is whether the trial judge's findings of fact support his legal determination to exercise jurisdiction. If his findings do not support the conclusion that jurisdiction exists, the prohibition action can go forward because the lack of jurisdiction is patent and unambiguous. However, if the findings are consistent with the exercise of jurisdiction, the relator's proper remedy is an appeal of the jurisdictional determination. The Leatherwork Partnership, 2002-Ohio-6477, at ¶ 20.
 {¶ 54} In the instant case, respondent's jurisdictional decision had an express finding that both parents and both children no longer resided in the state of Georgia, and that the children had been residents of Ashtabula County, Ohio, residing there with Bonds since November 2006. Under R.C. 3127.17(B), such a finding was sufficient to satisfy the second statutory requirement for acquiring jurisdiction to modify a prior custody order rendered in another state. Accordingly, since there is no question that respondent generally has subject matter jurisdiction over child custody matters, he had the authority under the foregoing case law to resolve any factual dispute regarding the extent of his jurisdiction over this particular case. Under such circumstances, it cannot *Page 23 
be said that any lack of jurisdiction was patent and unambiguous, and relator can only contest respondent's factual finding as to her residency through a direct appeal of the final judgment in the custody proceeding.[1]
 {¶ 55} Consistent with the entire foregoing analysis, this court concludes that, for purposes of a prohibition action, respondent has demonstrated that he has jurisdiction under R.C. 3127.17 to rule upon Bonds' motion to modify the prior custody order. First, the statutory definition of "home state" supports respondent's holding that, as a matter of law, Ohio was the subject children's home state when the underlying custody action was filed; therefore, respondent would have had the authority to make an initial custody determination pursuant to R.C. 3127.15(A)(1). Second, the evidentiary materials before this court show that respondent made the requisite factual findings as to the residency of the children and the parents to satisfy the requirement of R.C. 3127.17(B). Because relator can only assert a "manifest weight" argument regarding those findings, any lack of jurisdiction would not be patent and unambiguous, and cannot be contested as part of the instant proceeding.
 {¶ 56} As a final point, relator maintains that, in rendering his temporary custody order in September 2007, respondent failed to follow the statutory requirement for such an order under R.C. 3127.18(C). Specifically, she submits that the written judgment did *Page 24 
not place a time limit on the effectiveness of the temporary order so that Bonds would be required to go back to Georgia to obtain a new permanent custody order. As to this point, this court would indicate that the plain language of the governing provision states that the time limit is applicable only when the prior custody determination is entitled to be enforced and another state already has jurisdiction to issue a new permanent order. Under the undisputed facts of this case, the previous Georgia order would no longer be enforceable because the Michigan order, based on relator's alleged failure to properly care for the children, would be controlling. Moreover, under respondent's jurisdictional analysis, Georgia would no longer have jurisdiction over the custody dispute because Ohio has become the children's home state and neither parent still resided in the state having original jurisdiction.
 {¶ 57} Pursuant to Civ. R. 56, the moving party in a summary judgment exercise is entitled to prevail only when: (1) there are no remaining issues of material fact which need to be litigated; (2) the moving party has a right to be granted judgment as a matter of law; and (3) even when the evidentiary materials are interpreted in a manner that is most favorable to the nonmoving party, a reasonable person would still only be able to reach a conclusion adverse to that party.Willoughby-Eastlake City School Dist., 2000 Ohio App. LEXIS 1758, at *15. Applying this standard to the instant claim for relief, this court holds that respondent has established that relator cannot satisfy the second and third elements for a writ of prohibition. That is, respondent has not only proven under the undisputed facts that he is acting in accordance with the jurisdictional requirements of R.C. 3127.17, but that relator has an adequate legal remedy through which to contest the propriety of his jurisdictional ruling in the underlying custody action. *Page 25 
 {¶ 58} Accordingly, respondent's motion for summary judgment is granted. It is the order of this court that final judgment is hereby entered in favor of respondent as to relator's entire prohibition claim.
COLLEEN MARY OTOOLE, J., MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur.
[1] Citing Rosen v. Celebrezze, 117 Ohio St.3d 241, 2008-Ohio-853, relator maintains that the mere fact that respondent rendered a ruling upon the question of jurisdiction, does not preclude her from contesting the merits of the ruling in the instant prohibition action. However, our review of the Rosen decision shows that the Supreme Court only considered a pure legal question regarding the application of the Uniform Child Custody Jurisdiction and Enforcement Act; the case did not involve a factual dispute which affected the jurisdictional determination. Thus, we conclude that the Rosen decision is consistent with our prior precedent concerning which type of jurisdictional issue must be challenged through a direct appeal. *Page 1